THE PEOPLE *ex rel.* A. E. Parmenter, County Collector, Appellee, *vs.* STEPHEN H. WILDER *et al.* Appellants.

*Opinion filed February 20, 1913.*

1. DRAINAGE—*sub-districts are for the same purpose whether created by the owners or commissioners.* Under section 43 of the Farm Drainage act sub-districts of the second class, whether created by the land owners or the commissioners, are created for substantially the same purpose, which is to provide more detailed and specific drainage for limited areas than is comprehended within the general scheme.

2. SAME—*conditions upon which farm drainage commissioners may form sub-district.* The conditions upon which the commissioners may form a sub-district under section 43 of the Farm Drainage act as amended in 1901 are, that a certain area shall have one or more lateral drains or proposed drains independent of each other except as to the main drain or outlet, and that such lateral drains do, or will, drain separate areas within the district.

3. SAME—*section 43 of Farm Drainage act does not contemplate abandonment by district of principal ditches.* Section 43 of the Farm Drainage act, as amended in 1901, does not contemplate the abandonment by the district of the main or principal ditches or drains constructed by the district into which lateral drains draining separate areas have their outlet, but such ditches and drains are to be completed, maintained and repaired by the district as a whole.

4. SAME—*lateral ditch is a ditch extending from the side of a main ditch—what not lateral ditches.* A lateral ditch is a ditch extending from the side of a main ditch, and hence ditches branching from a short main ditch near the same point and leaving each other at acute angles, one continuing north and the others in a north-easterly and north-westerly direction, respectively, and continuing for several miles through the lands of the district, cannot be called lateral ditches.

5. SAME—*commissioners cannot require sub-district to pay for improvement of main ditches.* Section 43 of the Farm Drainage act does not authorize the commissioners to levy an assessment solely upon the lands of one sub-district to pay for the improvement of main ditches constructed by the whole district and running for several miles through the lands of the district, but the expense of such improvement must be paid by the whole district.

APPEAL from the County Court of Whiteside county; the Hon. WILLIAM A. BLODGETT, Judge, presiding.

A. A. WOLFERSPERGER, and MCCALMONT & RAMSAY, for appellants.

JACOB J. LUDENS, State's Attorney, WILLIAM H. ALLEN, R. W. E. MITCHELL, and MCMAHON & ROGERS, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellants, who were owners of lands in sub-district No. 3 of the Whiteside and Rock Island Special Drainage District in the counties of Whiteside and Rock Island, filed objections to the application of the county collector for judgment and order of sale of their lands to pay a special assessment levied on the lands of the sub-district by the commissioners. There were thirty-two objections by each of the several owners, and being the same they were by stipulation consolidated to form one case. The court, on motion of the collector, struck from the files most of the objections, overruled the remainder, and entered judgment, with an order of sale of the lands, to pay the assessment. The objectors appealed from the judgment.

All of the numerous objections are the subject of argument on behalf of both parties, but if the commissioners had no power to levy an assessment for the purpose specified in the order making this levy the other objections are not material. If the purpose of the assessment was unlaw-

257 — 20

ful many of the objections would not arise in relation to a lawful assessment.

The Whiteside and Rock Island Special Drainage District in the counties of Whiteside and Rock Island was organized in 1883 under the Farm Drainage act of 1879 as a special drainage district lying in two different counties. The commissioners planned and constructed a combined system of drainage, which is shown on their map, dated September 3, 1883. It consisted of a ditch running north from what appears to be a body of water, for a distance of about two miles, where it branched into three ditches, one continuing directly north, marked "Old county ditch," one running east of north, designated "Main line ditch," and one running north-westerly, marked "West ditch." About two miles above the junction of these three ditches another ditch turns off from the ditch designated main line ditch and runs eastward and then north, the distance being several miles. That ditch, however, has no connection with this case. On November 2, 1895, the commissioners created sub-district No. 1, covering a large section of the district, and two special assessments were levied and collected in that sub-district for the construction and maintenance of a dike to prevent the waters of Rock river, in times of freshet, from flowing into the district. On September 28, 1908, the commissioners made an order purporting to divide the lands of the whole district into six sub-districts. The order provided that sub-district No. 1 should continue to exist with the same boundaries but superimposed on the lands of the district other sub-districts, which could not lawfully be done. Sub-district No. 3, in which the lands of the objectors lie, is within the boundaries of sub-district No. 1, and the same is true of sub-district No. 2 and of a part of sub-district No. 4. Sub-district No. 3, which was by the order inserted in sub-district No. 1, is drained by the west branch, old county and main line ditches. On November 27, 1911, the commissioners levied

a special assessment of $10,400 upon the lands of sub-district No. 3 for the purpose of cleaning out and repairing the west branch ditch and old county ditch, which extended nearly through the sub-district, and for incidental expenses. This is the assessment which the county collector was endeavoring to collect.

The sub-districts were organized under section 43 of the Farm Drainage act, as amended in 1901. (Laws of 1901, p. 147.) That section provides that sub-districts may be formed by the owners of land in main districts for the purpose of local or more minute drainage, and such sub-districts shall have the right to use the ditches of the main district for outlets; that in drainage districts which have one or more lateral drains or proposed drains which are independent of each other except as to the main drain or outlet, and which do or will drain separate areas within the district, the commissioners may divide the district into as many sub-districts as there are separate areas, for the purpose of making assessments of benefits for the work to be done in said sub-districts, but that the formation of sub-districts by either method shall not operate to release the lands in the sub-districts from any assessment or tax levy which may be made for the completion, maintenance or repair of the main work or for the payment of any indebtedness incurred by the main district. It is further provided that drainage districts, as organized under the act, shall be known as the first, second and third class; that main districts shall belong to the first class; that sub-districts which have for their outlet the main district ditches or drains shall belong to the second class, and that minor sub-districts provided for in the act which have outlets into the main sub-district ditches or drains shall belong to the third class. Sub-districts, whether organized by the owners of land or formed by the commissioners, are of the same class and are declared to be districts of the second class. They are created for substantially the same pur-

pose, which is, to provide more detailed and specific drainage for limited areas than is comprehended within the scope of the general scheme. When organized by the owners of land the purpose is declared to be local or more minute drainage, with a right to use the ditches of the main district for outlets, and when formed by the commissioners they are to drain separate local areas within the district. The conditions upon which the commissioners may form a sub-district are, that a certain area shall have one or more lateral drains or proposed drains independent of each other except as to the main drain or outlet, and that such lateral drains do or will drain separate areas within the district. The section does not contemplate the abandonment by the district of the main or principal ditches or drains constructed by the district into which lateral drains draining separate areas have their outlet, but they are still to be completed, maintained and repaired by the district as a whole. The ditches constructed by this district branching from a short main ditch, and continuing north, east of north and north-westerly over the district, cannot be called lateral ditches. "Lateral" means coming from the side, and in drainage a lateral ditch is a side ditch extending from the side of a main ditch. Here the main ditch is divided into three, leaving each other at acute angles and extending for several miles through the lands of the district. Neither of them could be called a lateral ditch extending from the main ditch for the purpose of draining a limited area on a small scale as compared with the general system of drainage. The commissioners were not authorized to make a levy on the lands in sub-district No. 3 for the purpose of cleaning out or improving the ditches specified in the order, which were constructed by the whole district and run for several miles through the lands of the district.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*