THE PEOPLE *ex rel.* Samuel Sickles *et al.* Appellants, *vs.*
JOHN C. GILES *et al.* Appellees.

*Opinion filed June 24, 1915.*

1. STATUTES—*each part or section should be construed in connection with every other part or section.* A statute is passed as a whole and not in parts, and hence each part or section should be construed in connection with every other part or section, and in seeking the intent of the legislature the courts always consider the language used, the evil to be remedied and object to be obtained.

2. DRAINAGE—*power of commissioners to create sub-districts.* The provision of section 43 of the Farm Drainage act that the commissioners may, at their option, "divide the district into as many sub-districts as there are separate areas," does not mean that no sub-district can be created for any separate area unless sub-districts are also created for the other separate areas, but only that the commissioners shall not create more sub-districts than there are separate areas in the district, and hence it is lawful for the commissioners to create one or more sub-districts for separate areas without creating sub-districts for remaining separate areas.

APPEAL from the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

J. W. KERN, State's Attorney, and C. G. HIRSCHI, for appellants.

SAUM & MALO, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a petition filed in the circuit court of Iroquois county by the State's attorney of that county, on the relation of certain land owners, asking for leave to file an information in the nature ·of *quo warranto* to determine the right of appellees to act as commissioners of an alleged drainage district known as Sub-district No. 2 of Special Drainage District No. 1 of Onarga, Danforth and Douglas townships, in Iroquois county. The case ·being heard by the trial court on a stipulation of facts, the prayer of the petition was denied and judgment entered dismissing the petition. From that judgment this appeal was prayed. ·

By the stipulation of facts it is shown that Special Drainage District No. 1 was organized about 1884, and since the passage of the Farm Drainage act in force July 1, 1885, had been operated thereunder; that its system of drainage consisted of two main drainage channels or outlets and several large lateral. drains, independent of each other except as they connected with said main drains and outlets, each draining separate areas of land. It is further shown that sub-district No. 1 was formed by the commissioners of said Special Drainage District No. 1 many years prior to October 16, 1913, and that thereafter, on said last mentioned date, the commissioners of said Special Drainage District No. 1 adopted a resolution reciting that certain described lands within said district constituted a separate · area of land drained by lateral drains independent of any other drain in said district except said main drain or outlet thereof, and ordering that a sub-district be organized, including said lands constituting said separate area, to .be known as sub-district No. 2. It further appears that the balance of said Special Drainage District No. 1 outside of said sub-districts Nos. 1 and 2 was not organized by said drainage commissioners into sub-districts; that said com-

missioners caused to be prepared plats, specifications and profiles for the improvement of ditches within said alleged sub-district No. 2 and classified the lands within said sub-district, levying assessments thereon, including certain assessments on the lands of the relators.

Section 43 of the Farm Drainage act (Hurd's Stat. 1913, p. 960,) provides, in part, as follows: "Sub-districts may be formed by owners of land in main districts for the purpose of local or more minute drainage, in the manner provided in this act for the organization of main districts. Such sub-districts shall have the right to use the ditches of the main district for outlets or in drainage districts organized or proposed to be organized which have one or more lateral drains or proposed drains which are independent of each other, except as to the main drain or outlet, and which do now or will drain separate areas within said district, it shall be and may be lawful for the commissioners, at their option, to divide the district into as many sub-districts as there are separate areas, for the purpose of making assessments of benefits for the work to be done in said sub-district," etc.    Then follow certain provisions as to the organization of minor sub-districts within the sub-districts, dividing the districts provided for in said section into three classes, and stating how each of the three classes shall be controlled.

While the part of said section 43 quoted above is that which especially requires construction in this case, said quoted part must be read in connection with the remainder of the section, together with the entire act, in order to get an understanding as to the construction that should be placed thereon.    It is first provided in said section that a sub-district may be formed under the provisions of said Farm Drainage act by the owners of the lands themselves. It is not contended that any such action was taken in this case.    Said section also provides that it shall be lawful "for the commissioners, at their option, to divide the district

into as many sub-districts as there are separate areas." Counsel for appellants contend that under this wording, if the commissioners of any drainage district wish to organize sub-districts, they must form as many sub-districts as there are separate areas within said main drainage district; that they cannot form one or two, or any number of sub-districts less than the entire number of separate areas. The argument, as we understand it, is, that if it is desired, under this statute, to form a sub-district, or any number less than the entire number of separate areas, such action must be taken by the owners and not by the drainage commissioners.

The intention of the law-makers is the law, and this intention should be gathered from the necessity or reason of the enactment and the meaning of the words, enlarged or restricted, according to their real intent. A statute is passed as a whole and not in parts; hence each part or section should be construed in connection with every other part or section. In seeking the intent the courts always consider the language used by the legislature, the evil to be remedied and the object to be obtained. (*Warner* v. *King,* 267 Ill. 82.) The statute states that the formation of the sub-district is "for the purpose of making assessments of benefits for the work to be done in said sub-district." As was stated by this court in *People* v. *Wilder,* 257 Ill. 304, the purpose is "to provide more detailed and specific drainage for limited areas than is contemplated within the scope of the general scheme." This being the case, it is reasonable to suppose that the legislature intended to allow any separate area meeting the conditions specified in the statute, where the commissioners think more detailed drainage is required than in the main portion of the district, to be formed into a sub-district by itself. The statute says that the commissioners, "at their option," may divide the district into "as many sub-districts as there are separate areas." By no fair deduction from the wording of the statute can it be construed to mean that these sub-districts must all

be formed at the same time, or even eventually, by the commissioners. Conditions may readily be imagined in any drainage district where a more particular and detailed drainage might be needed for a limited area when another portion of the district would not at the same time, or at any time in the future, require any such additional drainage. In such a case, to require sub-districts to be formed as to the areas that did not need the particular drainage would seem to be most unreasonable and contrary to the plain intent of the statute. As we construe this act on this question, it is provided that the commissioners may, at their option, divide the main district into as many sub-districts as there are separate areas, but that it does not mean that all the separate areas must be organized into districts at a given time or any time, but merely that there should not be more sub-districts than there are such separate areas. In case further subdivision is required, said section 43 provides, as already stated, for the creation of such minor sub-districts as may be required in order to furnish proper drainage to all parts of the district.

While this precise question seems never to have been decided by this court, the conclusions that we have reached here are in harmony with the reasoning of this court where the question of the proper construction of this statute as to sub-districts has been considered in the following among other cases: *People* v. *Swigert,* 130 Ill. 608; *People* v. *Scott,* 132 id. 427; *People* v. *Sullivan,* 238 id. 386; *Commissioners of Sub-District* v. *McNulta,* 242 id. 461; *People* v. *Wilder, supra.*

The judgment of the circuit court refusing leave to file the information in question will be affirmed.

*Judgment affirmed.*