(No. 23299.—      No. 23311.—

THE PEOPLE *ex rel.* Edward J. Barrett, Auditor of Public Accounts, Appellee, *vs.* THE WEST SIDE TRUST AND SAVINGS BANK OF CHICAGO.—(L. H. HEYMANN *et al.* Appellees and Appellants, *vs.* WILLIAM L. O'CONNELL, Receiver, Appellant and Appellee.)

*Opinion filed February 14, 1936—Rehearing denied April 10, 1936.*

JOHN M. LEE, and CARL M. LOOS, for L. H. Heymann *et al.* appellants and appellees.

THOMAS D. NASH, and MICHAEL J. AHERN, for William L. O'Connell, Receiver, appellant and appellee; EMMETT J. McCARTHY, for appellee Edward J. Barrett, Auditor of Public Accounts.

Mr. JUSTICE WILSON delivered the opinion of the court:

The Auditor of Public Accounts assumed control of the West Side Trust and Savings Bank of Chicago on December 19, 1933, and on January 12, 1934, appointed William L. O'Connell receiver of the bank. Three days later the People of the State, on the relation of the Auditor, filed a bill of complaint in the superior court of Cook county against the bank, charging its insolvency and praying for its dissolution and the settlement of its affairs. Specifically, the relief sought by the complaint was that a decree be entered finding (1) that the capital stock of the bank had become so impaired it could not be re-organized and should be liquidated; (2) that the receiver designated by the Auditor had filed the requisite bond and taken possession of and the title to the banking house, furniture, fixtures, books, records and other assets of the bank for the purposes of the receivership; (3) that the receiver be directed by the court, upon filing proper petitions, to sell or compound all bad or doubtful debts due the bank, to sell real and personal property belonging to it, on such terms as the court might direct, and to compromise claims and debts due the bank whenever the best interests of creditors should so require, always subject, however, to the approval of the court; (4) that the receiver be authorized to present from time to time petitions seeking the aid and direction of the court with reference to various problems arising in the administration of the assets of the bank; (5) that the receiver be directed to present to the court, from time to time, a full and perfect inventory showing all assets of the bank coming into his possession; (6) that in case there

be a remainder of the proceeds of the bank's assets, after the payment of all claims previously proved or adjudicated, as required by law, and all the costs and expenses of the proceedings and receivership, the receiver be directed to report the amount of such remainder to the court for its further order and direction; (7) that the receiver be directed to file with the clerk of the court, after collection and distribution of all the proceeds of the assets of the bank, an itemized report of all moneys received and disbursed by him; (8) that the corporate existence of the bank be terminated and dissolved, and (9) that the complainants and the receiver have such other and further relief in the premises as equity may require and to the court shall seem meet. The receiver entered his appearance simultaneously with the filing of the complaint.

On April 26, 1934, L. H. Heymann and four other persons, the members of a bondholders' committee representing the holders of certain mortgage bonds sold by the bank, filed an intervening petition in the proceeding by which they sought the entry of an order directing the receiver to resign from all trusteeships under which the bank had been acting as trustee conformably to the provisions of various trust deeds. The petitioners alleged that they were acting under a deposit agreement dated September 30, 1931; that defaults had occurred under the provisions of the trust deeds securing the bonds sold by the bank; that a considerable number of bonds had been deposited with them, and that in a great many cases they held a majority in amount of the bonds outstanding of individual bond issues. Each of the trust deeds contained, among others, a provision that in case the trustee should "resign, be removed, or be dissolved or otherwise become incapable of acting hereunder, a successor or successors may be appointed by the holder or holders of a majority in amount of the bonds then outstanding hereunder, by an instrument or concurrent instruments in writing duly signed by them and recorded in the

recorder's office of the county or counties wherein the mortgaged property is located." The court granted the prayer of the petition and ordered the trustee to resign from the trusteeships under all trust deeds wherein it had been acting as trustee and to record the resignations within thirty days. On May 10, 1934, the intervenors filed a second petition alleging that pursuant to the provisions of the deposit agreement of September 30, 1931, numerous bonds had been deposited with the bank as depositary, and sought entry of a second order requiring the receiver (1) to deliver all bonds then on deposit with the bank as depositary to the American National Bank and Trust Company of Chicago, the successor depositary; (2) to deliver to the petitioners a list or lists setting forth, as to each property upon which bonds had been deposited conformably to the deposit agreement, (a) the loan number, (b) the location of the property, (c) the amount and bond number deposited, and (d) by whom deposited, together with the address of the depositor. The court entered an order granting this relief and directed the receiver to furnish the desired information within seven days.

Thereafter, on May 25, 1934, the receiver, with the concurrence of the Attorney General, asked leave to file a motion to vacate the orders of April 26 and May 10 on the ground that the court lacked jurisdiction to entertain petitions, filed by persons not parties to the complaint, seeking to compel the receiver to pay out or to act or to perform any other duty imposed upon him by section 11 of the Banking act, or otherwise. The chancellor allowed the motion to be filed and, by an order entered on June 14, 1934, vacated the previous orders and dismissed the intervening petitions. On July 12, 1934, the intervenors filed a third petition by which they sought the same relief as prayed for in the second petition. This petition differed only in that the Auditor was added as a respondent and asked that he procure and deliver the resignation of the receiver from

all trusteeships, wherein the bank had been nominated trustee under trust deeds. By its order entered the same day, July 12, 1934, the court refused to entertain the petition on the ground that it did not have jurisdiction over either the Auditor or the receiver for the purpose of granting the relief sought. The intervenors appealed to the Appellate Court for the First District seeking a reversal of the orders entered on June 14 and July 12, 1934. That court reversed the part of the order of June 14, 1934, which held that the trial court lacked jurisdiction to entertain the petition seeking the resignation of the receiver from trusteeships in which the bank had been designated as trustee, remanded the cause with directions to direct the receiver to resign within a short day to be fixed by the superior court, and affirmed the order in all other respects. This court granted the separate petitions of the receiver and the intervenors for leave to appeal. For the purposes of a hearing the causes are consolidated.

Two questions are presented, first, whether the court whose jurisdiction the Auditor invokes for the purpose of accomplishing the dissolution and the settlement of a closed bank's affairs may compel the receiver of the bank to resign trusteeships, and, if so, whether the court may direct the receiver to perform such acts and furnish such information as may be necessary to render the resignations effective. The determination of these questions necessitates a review of the pertinent provisions of section 11 of the Banking act.

Section 11 of the act (Ill. State Bar Stat. 1935, p. 160; Smith's Stat. 1935, p. 213;) provides, among other things, that "If the Auditor determines that the bank cannot be re-organized and that the same should be liquidated through receivership he shall appoint a receiver, and require of him such bond and security as he deems proper." The receiver of the bank in this case was properly appointed by the Auditor. (*People* v. *Shurtleff*, 353 Ill. 248.) The same para-

graph of section 11 provides: "Such receiver, under the direction of the Auditor, shall take possession of, and for the purpose of the receivership, the title to, the books, records, and assets of every description of such bank, and shall proceed to collect all debts, dues and claims belonging to it, and, upon the order of a court of record of the county in which said bank is located, may sell or compound all bad or doubtful debts, and on a like order may sell the real and personal property of such bank, on such terms as the court shall direct." The receiver is also specifically authorized "to sue and defend in his own name with respect to the affairs, assets, claims, debts and choses in action of such bank. He shall also have the authority and it shall be his duty, under the direction of the Auditor, to surrender to customers of such banks their private papers and valuables left with said bank for safekeeping upon satisfactory proof of ownership. As soon as can reasonably be done, he shall resign on behalf of said bank, all trusteeships, guardianships, conservatorships, and all appointments as executor and administrator, making in each case a proper accounting on behalf of said bank. He shall have the power and authority to redeem or take down collateral hypothecated by said bank to secure its notes or other evidences of indebtedness whenever the Auditor deems it to the best interest of the creditors of said bank so to do, and to do such other things and take such other steps from time to time under the direction and approval of the Auditor as may reasonably appear to be necessary to conserve the trust estate and secure the best interests of the creditors of said bank." The next paragraph of section 11 provides that the receiver may petition the circuit court of the county in which the bank is located for authority to borrow money and to pledge the assets of such bank as security therefor.

Another applicable paragraph of section 11 declares: "The Auditor of Public Accounts shall, upon appointing a receiver, cause notice to be given by advertisement in such

newspaper as he may direct, once each week for twelve consecutive weeks, calling on all persons who may have claims against such bank to present the same to such receiver and to make legal proof thereof, and in case the Auditor of Public Accounts, represented by the Attorney General's office, has instituted suit or proceedings for the dissolution or winding up of the affairs of such bank in the circuit court of the county where the bank is located, such persons or the receiver to whom such persons have presented their claims may present the same to the clerk of such court and the allowance or disallowance of such claims by said court in connection with the said proceedings shall be deemed an adjudication in a court of competent jurisdiction."

It is further provided by section 11 that from time to time the Auditor of Public Accounts shall make a ratable dividend of the moneys collected by the receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and, that as the proceeds of the assets of such bank are collected, he shall make further dividends on all claims previously proven or adjudicated.

Section 11 also declares: "The receiver of such bank shall, after the expiration of said twelve weeks, file with the Auditor and with the clerk of such court as may have charge of the liquidation, a correct list of all creditors of said bank, as shown by its books, who have not presented their claims and the amounts of their respective claims after allowing all just credits, deductions and set-offs as shown by the books of said bank. Such claims so filed shall be deemed proven, unless objections are filed thereto by some party or parties interested therein within such time as shall be fixed by the Auditor or by such court as may have charge of the liquidation."

The receiver argues that the court, in a proceeding instituted pursuant to section 11 for the purpose of dissolv-

ing a closed bank and settling its affairs, is merely an administrative agency to whom the statute has delegated the authority of sanctioning certain named acts of the receiver. In particular, the argument is made, that the only power of the court in such proceedings, whether administrative or judicial, over either the receiver or his superior, the Auditor, is found in those provisions of section 11 which provide that upon the order of a court of record the receiver may (1) sell or compound bad or doubtful debts, (2) sell real and personal property upon such terms as the court may direct, and (3) borrow money and pledge assets, and (4) in the portion providing that claims may be filed with the clerk of the court before whom the dissolution suit, if any has been filed, is pending. Persons other than the receiver, it is asserted, may invoke the jurisdiction of the court in the liquidation proceeding for one purpose only, namely, to present their claims as creditors for allowance or disallowance. All other demands by such persons, according to the receiver, constitute the subject matter of independent suits.

The intervenors contend that by filing the dissolution suit, thereby invoking the jurisdiction of a court of chancery, and by the entry of the receiver's appearance the same day, and by filing various petitions pertaining to other phases of the liquidation, the Auditor and his agent, the receiver, submitted not only themselves but also the assets and affairs of the bank to the jurisdiction of the court. The mandatory requirement of section 11 that the receiver shall resign trusteeships within a reasonable time, it is maintained, gives the court in charge of the liquidation, jurisdiction to coerce the resignations and to grant appropriate relief incidental thereto.

A primary purpose of statutory construction is to ascertain the intent of the legislature. It is a cardinal rule that this intent must be deduced from a view of the entire statute and of every material part of it taken and construed

together. (2 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 368; *People* v. *Hughes,* 357 Ill. 524.) Each part or section should be construed in connection with every other part or section, and in seeking the intent of the legislature the courts always consider the language used and the object to be attained. (*People* v. *Giles,* 268 Ill. 406; *Warner* v. *King,* 267 id. 82.) If the language employed admits of two constructions, one of which makes the enactment absurd, if not mischievous, while the other renders it reasonable and wholesome, the construction which leads to an absurd result should be avoided. *People* v. *Continental Illinois Bank,* 360 Ill. 454; *People* v. *Hughes, supra.*

The first section of the Banking act provides that banks or banking associations organized conformably to the provisions of the statute "shall have the power to loan money on personal and real estate security, and to accept and execute trusts." The provision of section 11 which commands the receiver to resign, on behalf of the bank, as soon as can reasonably be done, all trusteeships, guardianships, conservatorships, and all appointments as executor and administrator, discloses the manifest legislative intent that the trust business of the bank shall be speedily terminated. The actual dissolution of a banking corporation does not occur the instant the Auditor appoints a receiver of a closed bank, but the corporation continues as a legal entity. Nor does the appointment of the receiver, itself, automatically create any vacancy in trusteeships, the bank's status as trustee being maintained until the receiver, on behalf of the bank, resigns its trusteeships, as prescribed by section 11 of the Banking act. (*Dillon* v. *Elmore,* 361 Ill. 356.) The requirement is mandatory and the duty to resign is imperative, irrespective of the validity of a deposit agreement under which the bank may be acting as a depositary for defaulted bonds in addition to being the trustee under trust deeds securing the bonds. If the statutory command to resign is ignored the purpose of this salutary provision

would be nullified unless recourse to court action is available to compel compliance with the statutory duty. The primary purpose of the suit instituted by the Auditor was the ultimate dissolution of the bank and the settlement of its affairs. Resignation of the trusteeships would tend to facilitate the consummation of the purpose of the bill of complaint filed by the Auditor. Under the Banking act, when the Auditor and his agent resort to a court of equity for the purpose of dissolving a closed bank and settling its affairs and pray for general equitable relief they are not solely executive or administrative officers. Moreover, when the Auditor and the receiver invoked the statute for their own particular purposes they would naturally, in contemplation of law, be expected to abide by all of its provisions.

It is apparent from the provisions of section 11 that the Auditor is under no compulsion to appoint a receiver for the purpose of dissolving a banking corporation. He may still, however, appoint a receiver of a closed bank without asking for its dissolution. Some of the provisions of section 11, relating expressly to courts, refer to courts of competent jurisdiction and others to the court having charge of the liquidation proceeding. Whether a particular court is the court in charge of the liquidation depends upon whether the Auditor files a bill to dissolve the bank and settle its affairs. He and the receiver would, of course, have the right to have certain matters previously mentioned determined in any court of record in the county in which the bank is located. The Auditor has, however, in the present case, not only filed a suit to dissolve the bank and settle its affairs but it affirmatively appears from the record that the receiver has presented various petitions to the court with respect to settling the affairs of the bank. Furthermore, the bill here contained a prayer for general relief. The trial court in this case was unquestionably the court having charge of the liquidation of the bank within the contemplation of section 11. The statement of the receiver

that the liquidation proceeding is solely for his benefit, and that he cannot be compelled by the court having charge of the liquidation to perform the duties imposed upon him by the statute, carries its own condemnation. Two express references in section 11 to the court in charge of the liquidation negative the receiver's argument that the legislature intended to restrict the court's activities to aiding and assisting only the receiver. The manifest intent disclosed by all the provisions of section 11 is that the liquidation and settlement of the trust business of the closed bank should proceed to a speedy termination with a minimum of expense. The attainment of that eminently desirable object would be delayed indefinitely, if not defeated, if persons properly seeking to coerce the performance of duties imposed upon the receiver were compelled to resort to a different tribunal to litigate matters such as those in controversy. We find no language in section 11 which can be distorted to mean that the orderly dispatch of the business of courts should be upset by requiring the services of other courts for purposes that can be performed by the one. The court in charge of the liquidation of a bank is not a mere conduit for the benefit of the receiver.

The receiver insists, however, that the construction of the section of the National Banking act corresponding to section 11 of the Illinois Banking act is applicable. (U. S. Code Ann. title 12, Banks and Banking, sec. 192.) While it is true that the sections designated are similar in a few respects, a comparison of the sections discloses that the respects in which they are dissimilar are far more numerous than those which show marks of similarity. Our statute contains many provisions not found in the National Banking act and provides for essentially different methods of handling the affairs of closed banks. The National Banking act contains no provision even remotely resembling the requirement of section 11 with respect to the resignation of the receiver, on behalf of the bank, from trusteeships

and like fiduciary capacities. Nor does the section of the National Banking act invoked by the receiver provide for a suit to dissolve the bank and settle its affairs if the comptroller so elects. Again, that law contains no reference to the court in charge of the liquidation. A statute itself affords the best means of its exposition, and if the legislative intent can be ascertained from its provisions, that intent will prevail without resorting to other aids for its construction. 2 Lewis' Sutherland on Stat. Const. (2d ed.) secs. 348, 366; *People v. Continental Illinois Bank, supra; People v. Oregon State Savings Bank,* 357 Ill. 545.

Reliance is placed on *People v. Peoria Life Insurance Co.* 357 Ill. 486, and *People v. Niehaus,* 356 id. 104, to support the argument that the receiver appointed by the Auditor is merely an administrative officer who is not subject to the jurisdiction of the court. The principal questions presented for decision in those cases related to the power of appointing receivers of insolvent insurance companies. The cases cited do not aid the receiver as they do not purport to construe section 11 of the Banking act. Moreover, it is conceded that the receiver of the bank in the present proceeding was properly appointed.

The sole relief sought by the intervenors in their first petition filed on April 26, 1934, was the resignation of the receiver from trusteeships in which the bank had been designated trustee. Resignation of the receiver from the bank's trusteeships is the initial step to be taken in disposing of them. Since the resignations from the trusteeships must be completed and accountings filed on behalf of the bank before a decree of dissolution can be entered, the subject matter of the intervening petitions is germane to the liquidation suit. The right of the intervenors, however, to invoke the power of the court to order such resignations is attacked. The relief sought should have been granted and we perceive no reason why the committee purporting to represent the holders of defaulted bonds could not inter-

vene in the liquidation proceeding for the purpose of coercing the performance of a statutory duty inseparably connected with and pertaining to the liquidation and settlement of the affairs of the bank.

The relief sought by the second and third petitions is ancillary to the relief sought by the first. No useful purpose would be served by merely directing the receiver to resign the trusteeships. The defaulted bonds in the hands of the bank as depositary with the exception of those, if any, owned by the bank were not assets of the bank but belonged to their respective individual owners. The receiver did not take title to these bonds, but merely assumed physical possession of them. Disposition of the bonds is merely incidental to the resignation from the trusteeships and the prescribed accountings. The resignation, only, without transferring such documents, papers and property as belonged to the trusts would be simply a futile gesture. Since the trial court had the power to compel the resignation of the receiver from trusteeships on behalf of the bank it necessarily follows that the court likewise had the power to effectuate its order by directing the receiver to turn over the property in his possession to those to whom it rightfully belonged or who were entitled to its custody. Our conclusion is fortified by the language of section 11 which not only requires the receiver to resign but also declares that when his resignation is forthcoming a proper accounting shall be made with respect to each trust. The record discloses that a successor depositary, the American National Bank and Trust Company, has been appointed and is ready to receive the trust deeds and the deposited bonds upon the resignation of the receiver. The action of the court in compelling the resignations and the turning over of the bonds in no way passes upon the title but relieves the depositary of its obligation. We are of the opinion that the trial court had jurisdiction to entertain each of the three petitions in controversy.

The judgment of the Appellate Court is affirmed in so far as it reversed the order of the superior court entered on June 14, 1934, but it, and the orders of June 14 and July 12, 1934, are reversed in all other respects, and the cause is remanded to the superior court, with directions to enter an order requiring the Auditor and the receiver to show cause why they should not, as requested by the intervenors, deliver all bonds on deposit with the bank as depositary to the successor depositary, and produce the names, addresses and amounts held by each of the depositing bondholders.

No. 23299—*Judgment affirmed.*

No. 23311—*Reversed and remanded, with directions.*