(No. 26521.—

THE INTER-STATE WATER COMPANY, Appellee, *vs.* THE CITY OF DANVILLE, Appellant.

*Opinion filed January 22, 1942.*

Ralph Rouse, Corporation Counsel, for appellant.

Defrees, Buckingham, Fiske & O'Brien, and Acton, Acton, Baldwin & Bookwalter, (Matthew Mills, and W. M. Acton, of counsel,) for appellee.

Mr. Justice Wilson delivered the opinion of the court:

May 8, 1939, the Inter-State Water Company filed a petition with the Illinois Commerce Commission seeking permission to increase the rates which it might be authorized to charge its consumers for water service in the city of

Danville and adjacent territory, including the villages of Tilton and Westville. The commission notified these municipalities of the proceeding instituted by the water company. No other person, corporation or municipality intervened or was brought into the proceeding by the company, the city of Danville, or the commission. Numerous hearings were conducted and considerable testimony was introduced concerning the value of the water company's property for rate making purposes, the fair rate of return to which the company was entitled on the fair value of its properties, and the question of proper or improper management of the company's operations. Among those testifying were engineers and accountants on behalf of the company and the commission, and the city engineer for the city of Danville. The city of Danville was represented by counsel at all, and the villages of Tilton and Westville at two, hearings. An assistant Attorney General of the State appeared on behalf of the commission at all hearings. January 28, 1941, the commission entered an order authorizing an increase in domestic and industrial rates affecting all private consumers of the water company within the city of Danville, the village of Tilton and adjacent territory, the increase averaging about fifteen per cent, but not awarding any increase in the rate for water used by the city itself. The annual fire hydrant rental of $40 per hydrant and the rate for water for all municipal purposes remained the same under the new order as under an earlier order fixing rates to be charged by the company. From the company's petition it appears that free water was furnished the city for some purposes. So far as the record discloses, the order of January 28, 1941, did not authorize a charge to be made for such service in the future. The order was put into effect by the company "for bills rendered on and after March 1, 1941," as authorized by the commission, and has since been in effect. A petition for rehearing filed by the city of Danville was denied. Thereafter, the city prosecuted an appeal to the

circuit court of Vermilion county. The company interposed a motion to dismiss the appeal on the ground that since the challenged order of the Commerce Commission did not authorize an increase in the rates for water service furnished the city, it was in no way affected by the order and not entitled to appeal therefrom. July 8, 1941, the court sustained the company's motion and dismissed the appeal. From this order the city of Danville has prosecuted a further appeal to this court.

The single question presented for our decision, it is agreed, is whether the appellant, the city of Danville, had the legal and statutory right to appeal from the order of the Commerce Commission authorizing an increase in the domestic and industrial rates of the consumers of the appellee, the Inter-State Water Company, within the city. A determination of this issue requires a review of the relevant provisions of the applicable statute.

Section 64 of the Public Utilities act (Ill. Rev. Stat. 1941, chap. 111⅔, par. 68, p. 2513) declares that all cities shall have power to appear as complainants or to make application before the Commerce Commission for an inquiry, investigation or hearing relating to the "rates or other charges or services of public utilities within such city." In case of any inquiry, investigation or hearing by or before the commission on any matter relative to the "rates or other charges or services within any city," the city, it is further provided, shall receive written notice not less than ten days before, and shall be entitled to appear and present evidence relating to the subject matter of the inquiry, investigation or hearing. Provision is made for serving the prescribed notice upon the city clerk and the city attorney or head of the city's law department. Section 65 requires notice to be given to interested parties. This section, so far as pertinent, reads: "In any matter concerning which the commission is authorized to hold a hearing, upon complaint or application or upon its own motion, notice shall be given to the public

utility and to such other interested persons as the commission shall deem necessary in the manner provided in the preceding section, and the hearing shall be conducted in like manner as if complaint had been made to or by the commission." Section 66 provides for service of every order of the commission upon every person or corporation to be affected thereby, either personally or by mail. This section provides, however, that where the persons or corporation, or both, exceed three in number, the requisite service may be upon the attorneys or representatives of record, if any. Section 68, provides, in part: "Within thirty days after the service of any order or decision of the commission refusing an application for a rehearing of any rule, regulation, order or decision of the commission, * * * any person or corporation affected by such rule, regulation, order or decision, may appeal to the circuit or superior court of the county in which the subject matter of the hearing is situated."

To obtain a reversal of the order of the circuit court, appellant maintains the foregoing statutory provisions reflect the legislative intent that a city stands in a representative capacity for its residents, either as complainants or defendants, before the Commerce Commission in matters affecting rates or other charges or services of public utilities within the city. The further contention is made that, irrespective of representation, if a city, as here, had sufficient interest to be made a party to the proceeding, and to contest generally with respect to all classification of rates, it had an appealable interest from an adverse order and that appellee, by recognizing it as an interested party in the first instance, is precluded from denying its right to appeal. To sustain the order of dismissal, appellee maintains that section 68 of the Public Utilities law authorizes an appeal by a city from an order of the Commerce Commission only when it operates directly and injuriously upon the city's personal, pecuniary or property rights.

A cardinal rule of statutory construction is that the legislative intention must be deduced from a view of the entire statute and of every material part of it taken and construed together. A particular portion of an act is often designed to extend, qualify or limit another provision so that its meaning may well depend upon the effect of another part or section. (2 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 368; *People ex rel. Barrett* v. *West Side Trust and Savings Bank,* 362 Ill. 607; *People ex rel. Auburn Coal Co.* v. *Hughes,* 357 id. 524; *People* v. *Linn,* id. 220; *People ex rel. Pollastrini* v. *Whealan,* 353 id. 500.) Since a statute is enacted as a whole and not in parts, each part or section should be construed in connection with every other part or section. In seeking the intent of the legislature the courts consider not only the language used but the evil to be remedied and the object to be attained. (*People* v. *Hughes, supra; People ex rel. Sickles* v. *Giles,* 268 Ill. 406.) If the language employed admits of two constructions, one of which makes the enactment mischievous, if not absurd, while the other renders it reasonable and wholesome, the construction which leads to an absurd result should be avoided. *Burke* v. *Industrial Com.* 368 Ill. 554; *People* v. *Continental Illinois Bank,* 360 id. 454.

Recourse to section 64 discloses that the provision authorizing cities to appear as complainants in certain matters before the Commerce Commission is unrestricted in scope. The power to appear as a complainant is not limited to those matters in which the city, as a municipality, is directly and financially involved but, according to the plain language of section 64, the city may initiate inquiries, investigations, or hearings relating to the "rates or other charges or services" of public utilities within such city. Section 64 discloses the manifest legislative intent that the city may represent the interest of its residents in initiating proceedings against public utilities on their behalf so far as the proceedings relate to "rates or other charges or services within such city."

Next, where a utility company, itself, seeks an increase in rates within a city, as here, sections 65 and 66 prescribe that notice be given the city, as a municipal corporation. In particular, section 65 commands that notice be given to such interested parties as the commission shall deem necessary. Section 66 prescribes, in detail, the character of notice to be given and further provides that where the persons or corporations to be affected by an order of the commission exceed three in number notice may be served upon their attorneys or representatives of record. Again, when an application for an increase in rates is filed, as in the present proceeding, section 64 declares that the city shall not only be entitled to appear but shall be entitled to present evidence relating to the subject matter of the inquiry, investigation or hearing. Conformably to this section, appellant presented evidence at the hearings before the commission, not merely because of the proposed increase in municipal rates but also because of the proposed increase in domestic and commercial rates. The foregoing provisions of the Public Utilities law demonstrate that appellant was a party before the commission not only because it was, itself, a consumer of water, but for the additional reason it was the representative of the resident consumers within its territorial limits. Notice was not given any individual consumer of water within the city of Danville either by the Commerce Commission or by the water company. Both the commission and the company, it follows, recognized the city as an interested party and one to be affected by such order as might be entered in the proceeding. In the light of the relevant portions of the statute, we cannot ascribe to the legislature an intent to accord a city the right to represent its residents in inquiries, investigations and hearings, involving "rates or other charges or services" within the city, to the point of the entry of an order and then denying the city, as the representative of its residents, the right to a review of an adverse decision. The provisions of sections 64, 65, 66, and 68, construed together, admit of but one conclusion, namely,

that a city is a party affected by an application for an increase of rates of a public utility within the city and that this interest does not terminate upon the entry of an order adverse to the city's residents but favorable to the city itself and particularly where, as here, the resident consumers are not parties before the commission. Indeed, if appellant was not the representative of its residents then no one, so far as domestic and commercial rates are involved, was before the commission and the order of January 28, 1941, as to such rates, was an *ex parte* order entered without notice and, hence, void. Furthermore, a city might later be subjected to an order sanctioning an increase in rates because it also was a consumer and would be confronted with a ruling adverse to it.

Appellee insists, however, that *Public Utilities Com.* v. *City of Dixon,* 292 Ill. 521, is decisive in its favor. In the case cited, it appears that the Dixon Water Company filed a petition with the Public Utilities Commission for authority to supply all private consumers with water by meter measurement and to purchase the meters owned by consumers who were then supplied by meter but who owned their own meters. The company also sought to establish, in addition to the existing rates for water consumption as measured by meters, a service charge equal to the one established by the commission at Pekin, on March 8, 1917. Following a hearing, an order of the commission granted the water company permission to sell water to all private consumers by meter measurement at the existing schedule rates for such measurement, and provided that the company should purchase the meters owned by those consumers willing to sell at a price fixed in the order, or, when a purchase could not be so consummated, to substitute a meter owned by the company, and to charge three dollars per annum as a service charge for five-eighths-inch meters, by which 1800 consumers were supplied, and a higher rate for a few using larger meters. Upon appeal, the circuit court

of Sangamon county confirmed the decision and order of the commission. The city prosecuted a further appeal to this court. Several issues were presented for decision, the first being the propriety of the portion of the order authorizing the substitution of a meter for one owned by a consumer where the consumer refuses to sell his meter to the company at a price fixed by the commission. The city of Dixon contended this provision, without a hearing by a court or jury, contravened the constitutional guaranty that no person shall be deprived of life, liberty or property without due process of law. Answering this first contention, this court said: "Whether the rights of a consumer are violated by being compelled to discontinue the use of a meter giving satisfactory service and accurately measuring the water used and to accept for his meter a price fixed by the commission violates a constitutional right is a question in which the city of Dixon is in no way concerned. No one can raise that question except some consumer whose rights are in some way affected. [Citations] There appears to be a charge for hydrant rentals not supplied through meters, and it is not claimed that the city of Dixon owns or uses any meter or that it is affected in any manner by the option to sell meters at fixed prices. The city does not represent any private consumer of water, and the assignment of error not being made by any person owning a meter cannot receive consideration." The Public Utilities act does not purport to permit a complaint by a municipal corporation with respect to every matter before or order made by the commission but only where "rates or other charges or services" are involved is the right to file a complaint and to prosecute an appeal granted. It will be observed that neither the circuit court nor this court dismissed the appeal of the city of Dixon. Indeed, this court considered and decided the second issue as to the authority of the commission to direct that all water service be metered. A third contention made by the city was that the service charge of three dollars per

annum was excessive, unreasonable and unlawful. This question, as well as the second, involved the matter of "rates or other charges or services," within the contemplation of section 64 of the Public Utilities act. Although the contentions made were decided adversely to the city of Dixon they were, nevertheless, considered and decided. In short, there were involved both a private matter, of concern solely to the resident consumers of water, a question the city of Dixon had no right to present before the commission in the first place, and, also, matters concerning "rates or other charges or services" affecting the city of Dixon, as well as its residents. Manifestly, no question of the right of the city of Dixon to appeal was presented for decision or passed upon by this court.

Apart from the issue of representation, we hold that the city having been recognized by the commission and the water company as having sufficient interest to be made a party to the proceeding was, in consequence, "affected" by the order awarding an increase of rates. To hold otherwise would be to unduly restrict the meaning of the general word "affected," a more comprehensive term than the word "aggrieved" used in some authorities invoked by appellee. We deem it sufficient to observe that section 68 does not say "aggrieved," "directly affected," "monetarily affected," or "injuriously affected," but merely "affected." The record discloses it was appellant, and appellant alone, that contested the propriety of a general increase in rates, applicable not only to municipal rates for water service but also to domestic and commercial rates. Its contention was that there should be no increase in rates. The mere fact that it was not directly and pecuniarily damaged as a result of the order entered is not decisive of its right to appeal under section 68. Obviously, the consumers residing in Danville were directly affected in a pecuniary manner and, in a very real sense, appellant, as their representative was likewise affected by the order assailed. An immediate pecuniary

damage, we have recently decided, is not always prerequisite to the right of appeal. (*Lenhart* v. *Miller,* 375 Ill. 346.) Indeed, it may be observed that if appellee's construction of "pecuniarily affected" should prevail, a public utility company could always defeat an appeal by a city by consenting to a continuance of the current rate to a municipality while insisting upon a higher rate to the city's residents whom it also represented.

Our attention is directed to decisions from other jurisdictions where commissions, corresponding to our Commerce Commission, represent the people and where the city is not deemed affected by an order adverse to its residents. In Illinois, the Commerce Commission is an administrative board, quasi-judicial, only, in its nature. (*Lambdin* v. *Commerce Com.* 352 Ill. 104.) It is true, of course, that pursuant to statute it may institute proceedings on its own motion and may make independent investigations. Its decisions, however, must be judicial and, if so, the commission cannot be said to represent one party as against another. The plain intent of the applicable provisions of our Public Utilities act is that cities may be parties complainant before the commission and may also appear and defend against petitions for rate increases within their boundaries. Sections 64, 65, and 66, when construed together with section 68, disclose the purpose of the General Assembly to permit a city to appeal from orders in those cases where it is a party complainant or where made a party by the commission, as here.

The order of the circuit court is reversed and the cause is remanded, with directions to overrule appellee's motion to dismiss. .

*Reversed and remanded, with directions.*