Roesch-Zeller, Inc., Plaintiff-Appellee, v. Harold A. Hollembeak, Supervisor of Town of New Salem, Pike County, Illinois and Harold A. Hollembeak, as Ex-Officio Treasurer of Road and Bridge Funds of Town of New Salem, Pike County, Illinois, Defendant-Appellant.

Gen. No. 9,966.

Third District.

February 18, 1955.

Released for publication March 7, 1955.

Schimmel & Schimmel, of Pittsfield, for appellant.

David C. Williams, of Pittsfield, for appellee.

MR. JUSTICE HIBBS delivered the opinion of the court.

A petition for a writ of mandamus was filed in the circuit court of Pike county, Illinois by Roesch-Zeller, Inc., appellee here, to compel the appellant, Harold A. Hollembeak, ex-officio treasurer of the road and bridge fund, of the Town of New Salem, in that county, to pay two orders for $7,981.33 and $8.68 respectively, issued by the highway commissioner in payment of road equipment purchased by him. The order for the larger amount was the sum due on a contract for the purchase of a caterpillar road grader to be paid out of the proceeds of the sale of bonds authorized by the town for the purchase of road equipment. The order for $8.68 was in payment of filters for future use in the operation of the road grader in changing oil, and was drawn on the road and bridge fund.

The cause was tried by the court resulting in a judgment directing the issuance of a peremptory writ of mandamus commanding the treasurer of the road and bridge fund to pay the orders. In addition the court entered judgment against the defendant, individually, for the sum of $1,000.04. A motion by defendant in arrest of judgment was not passed on by the court, but a motion for new trial was denied.

In this court the appellee moved to strike the report of the proceedings at the trial and to dismiss the appeal, which motions were taken with the case.

The record filed here incorporates the report of the proceedings at the trial, but does not show the date it was filed in the office of the circuit clerk. Under the rules of the Supreme Court and the orders entered by the trial court, the last day to file such report was March 24, 1954. It was presented to and signed by the

trial judge on the 5th day of March 1954. The circuit clerk certified the record, including such report, under his hand and seal on the 17th day of March of the same year. The record was filed with the clerk of this court on the 22nd day of March, two days before the last day on which the report of the proceedings at the trial could be filed in the office of the clerk of the trial court. Under these conditions appellee contends that because the record fails to show the clerk's filing mark on the report, the same should be stricken by virtue of the provisions of Rule 36 (1)(c)(e) of the Supreme Court, as construed and applied in Lukas v. Lukas, 381 Ill. 429.

The issue here presented is a narrow one. Counsel for appellee does not contend that the report of the proceedings at the trial signed by the trial judge was not delivered to the clerk of the circuit court for filing, in apt time, but says that the mere ministerial act of the clerk in failing to place thereon a file mark, requires this court to either strike the report or dismiss the appeal or both.

██ The duty of the clerk to file the document on the date it was presented to him was a ministerial act, the performance of which could be compelled by writ of mandamus. He certified the record under date of March 17, 1954, and it was filed with the clerk of this court on the 22nd day of that month. If the certification of the record in this case was dated subsequent to the last day upon which the report could be filed, an entirely different question would arise. The situation here is entirely unlike the case of Lukas v. Lukas, supra, where the report was not actually presented to the clerk for filing until seven days after the last day for the filing of the same. We would not be justified, under the conditions above set forth, in striking the report in this case or dismissing the appeal on the ground assigned.

■■■ Appellee's other motion requests the court to dismiss the appeal because of the failure of appellant to comply with Rule 1 (2) (c) of this court, which provides "within five days after the record on appeal is filed in this court, the Appellant shall serve written notice of the filing date on the opposing parties and at the same time shall mail a copy of the notice to the clerk of this court." This rule does not go to the jurisdiction of the court. It was intended to give to the appellee information as to the date of the filing of the record, the last day on which under the rules appellant's abstract of record, brief and argument, appellee's brief and argument, and appellant's reply, were respectively due, and to the clerk of a compliance with the rule. Appellee does not contend that it was in any wise prejudiced by a failure to comply with such rule, and in the absence of such a showing, the appeal should not be dismissed for that reason.

■■■ Appellant contends that the pleadings in the cause are not sufficient to support the judgment, and therefore the court erred in overruling his motion in arrest of judgment. A motion in arrest of judgment was filed but no ruling was made thereon by the trial court. It was said in Goodrich v. Sprague, 376 Ill. 80 at page 86: "The office of Appellate Court is to review rulings, orders, or judgments of the court below, contained in the record, and matters not ruled upon by the inferior court are not subject to the consideration of the Appellate Court unless the lower court's failure to rule is made the subject of an assignment of error, in which case the propriety of such failure is the question presented to the Appellate Court and not the merits of the matter upon which the trial court refuses to act. In other words, the Appellate Court's jurisdiction is appellate, and extends only to those matters in controversy which have been ruled upon by the trial court." We believe this holding to be conclusive. The appellant did

100

not assign error on the failure of the trial court to pass upon the motion. The question of the sufficiency of the pleadings is not before us.

The highway commissioner of the Town of New Salem, Pike county, on May 21, 1953 entered into a contract with plaintiff for the purchase of a caterpillar road grader whereby he traded in two used pieces of road equipment, one known as an "Old Trojan" and the other a "60 Cat," receiving a credit of $800. The net purchase price of the new machine, after allowing the above credit, was $7,981.33. On the same day the county superintendent of highways of Pike county approved the contract in writing on the face thereof. Delivery under the contract was made, at which time the commissioner ordered certain filters for future use in changing oil in the new grader. On July 20, 1953 the commissioner drew two orders on the defendant treasurer, one on the bond fund for the purchase price of the new equipment in the sum of $7,981.33, and the other on the road and bridge fund for $8.68 in payment of the filters. Both orders were countersigned by the town clerk. On the following August 15th, the plaintiff-appellee presented such orders and the original contract for the road grader, approved by the superintendent of highways, to the defendant for payment. At that time there was ample monies in each fund to pay the respective orders, but the defendant refused to honor and pay the same, for the reason that the equipment purchased was in his opinion not sufficiently large and the credit for the old equipment was insufficient.

In this court the defendant contends that the orders for the payment of the new equipment do not bear the signature of the county superintendent of highways, nor was there any other instrument presented to him signed by such officer approving the orders as required by sec. 52 of the Road and Bridge Act. (Par. 58, ch. 121, Ill. Rev. Stats. 1953 [Jones Ill. Stats. Ann. 120.061].)

101

■■ In People ex rel. Barrett v. West Side Trust & Savings Bank of Chicago, 362 Ill. 607 at page 615, it is said: "A primary purpose of statutory construction is to ascertain the intent of the legislature. It is a cardinal rule that this intent must be deduced from a view of the entire statute and of every material part of it taken and construed together. (2 Lewis' Sutherland on Stat. Const. (2d Ed.) Sec. 368; People v. Hughes, 357 Ill. 524.) Each part or section should be construed in connection with every other part or section, and in seeking the intent of the legislature the courts always consider the language used and the object to be attained. (People v. Giles, 268 Ill. 406; Warner v. King, 267 Ill. 82.)" To the same effect is People ex rel. Nelson v. Olympic Hotel Building Corp., 405 Ill. 440, 444.

The act of the legislature entitled "An Act to Revise the Law in Relation to Roads and Bridges," pars. 1 to 174, secs. 1 to 157, ch. 121, Ill. Rev. Stats. 1953 [Jones Ill. Stats. Ann. 120.001–120.170] provides for the office of county superintendent of highways, a commissioner of highways in each town in counties under township organization and a treasurer of the road and bridge fund, and specifically sets forth the duties of each. By subpar. 3 of sec. 8.3 of the Act [Ill. Rev. Stats. 1953, ch. 121, § 8.3; Jones Ill. Stats. Ann. 120.008(3)], the county superintendent of highways is empowered to advise and direct the highway commissioner of the towns or district in his county as to "the best methods of repair, maintenance and improvement of highways and bridges," and by sub-par. 6 thereof, is required to keep a record of all contracts of purchases of material, machinery or apparatus to be used in road construction in excess of $500 approved by him in any town "as hereinafter provided." Nowhere is such officer directed to finally pass upon the acceptance of any road construction, material, machinery or equipment, the cost of which exceeds the sum of $500, nor is he authorized to

approve or disapprove orders drawn by the commissioner of highways on the treasurer of the road and bridge fund in payment of amounts due under such contracts.

By sub-par. 5 of sec. 50.1 [Ill. Rev. Stats. 1953, ch. 121, § 56.1; Jones Ill. Stats. Ann. 120.058(1)], the commissioner of highways is authorized "to direct the expenditure of all moneys collected in the town. . . . for road and bridge purposes . . . and draw warrants on the town . . . treasurer therefor." By sub-par. 6 of sec. 50.1 of the Act, he is directed to construct, maintain, repair and be responsible for the construction, maintenance or repair of roads and bridges within his town, let contracts, employ labor and purchase materials and machinery therefor "subject to the limitations herein provided." Following this in the same paragraph it is provided that the highway commissioner shall not let any contract for the construction or repair of any roads or bridges in excess of the amount of $500 nor for the purchase of any material, machinery or apparatus to be used in road construction or maintenance in excess of said sum without the written approval of the county superintendent of highways. By sub-par. 13 of the same section, he is directed to "issue his warrant or order on the treasurer for the payment of all moneys paid out by such treasurer, provided such warrants or orders are countersigned by the town . . . clerk."

This section specifically provides the limitation upon the highway commissioner in letting contracts for road machinery and equipment in excess of $500. It further provides the manner in which the cost of such apparatus or machinery and equipment shall be paid, namely: By an order drawn on the treasurer of the road and bridge fund, to be countersigned by the town clerk. It does not provide for a separate approval by the superintendent of any order drawn on the treasurer.

Section 52 of the Act [Ill. Rev. Stats. 1953, ch. 121, § 58; Jones Ill. Stats. Ann. 120.061] concerns the duties of the treasurer of the road and bridge fund, and in substance provides that he holds the funds at all times subject to the orders of the commissioner, but any order issued shall be countersigned by the town clerk, and in case the order is for more than $500, or for several orders of $500 and less in payment of a contract or contracts constituting a single project or transaction, either for road construction, maintenance or purchase of material, machinery and apparatus, the treasurer shall not honor said order or orders unless they are accompanied by the written approval of the county superintendent of highways in the case of townships under township organization.

Section 51 [Ill. Rev. Stats. 1953, ch. 121, § 57; Jones Ill. Stats. Ann. 120.060] provides that the town clerk shall have the custody of all the records of the commissioner of highways and among his duties as such it is provided by sub-par. 1a "the clerk shall countersign and keep a complete record of all warrants issued by the highway commissioner."

Appellant insists that in all cases where the contract is for more than $500, not only must the county superintendent of highways approve the contract, but where the work has been completed or the machinery, appliances or equipment has been furnished, before the treasurer may honor the commissioner's order, a separate approval of such order must be executed by the county superintendent of highways and presented with the order drawn, or the order must be countersigned by such officer, as a condition precedent to the honoring and payment of the same.

It would extend this opinion to lengths not warranted in setting out the method by which the county superintendent of highways may be appointed. It will suffice to say that sec. 8 of the Act [Ill. Rev. Stats. 1953, ch. 121,

§ 8; Jones Ill. Stats. Ann. 120.008] prescribes certain scholastic or practical experience in civil and highway engineering as a qualification for appointment to the office, and the Department of Public Works and Buildings is required to give the candidates appropriate examination, and no candidate for the office can be appointed who has not made a satisfactory grade in such examination. No doubt the legislature in directing that no single contract or combinations of contracts for one project or transaction in the aggregate of more than $500, whether for road construction, purchase of materials, machinery or appliances should be let by the commissioner without the approval of the county superintendent of highways, considered such latter official better qualified by training and experience to determine whether the contract was in the best interests of road construction and repair in the town involved. If it had been intended that such county superintendent should inspect the work or the machinery or equipment when performed or delivered, and issue his approval of any orders drawn in payment therefor, it would have so provided. No provision, however, is made in such case. No limitation is placed upon the highway commissioner in entering into contracts as above set forth, except when the entire cost exceeds $500, it shall be approved by the county superintendent of highways. He is authorized to issue his warrants or orders in payment of road construction and maintenance, and cost of material, machinery, appliances, provided the warrants or orders are countersigned by the town clerk.

 It would be a strange construction of the entire Act to hold that under sec. 52 relating to the duties of the treasurer of the road and bridge fund, to say that the orders must be accompanied not by the written approval of the county superintendent of highways to the contract, but an approval of the orders drawn by the commissioner of highways. There is

nothing in the Road and Bridge Act to indicate any such intent, except the phrase in sec. 52 "unless said orders are accompanied by the written approval of the county superintendent of highways." This phrase, if given the intent ascribed to it by appellant, would require the county superintendent of highways to inspect the work as it progressed in the case of road construction and maintenance and pass upon its approval. In the case of machinery and equipment purchased, he would be required to inspect the same when delivered. No such duties are cast upon that officer, and it was never intended that they should come within the scope of his office. The only approval he is authorized to make is of the contract or contracts for one transaction where the entire cost exceeds $500. The language used in sec. 52 refers not to the approval of the order but to the contract bearing the approval of the county superintendent of highways. The highway commissioner is the official charged by the statute with the duty of determining if the work, material, machinery or equipment, as the case may be, is in conformity with the contract. Thus construed all of the pertinent sections of the Act are rendered harmonious.

The commissioner of highways had as a part of his road equipment an "Old Trojan" and a "60 Cat." This equipment he traded in and was given a credit of $800 on the caterpillar road grader, purchased under the contract. When the contract (exhibit 4) was offered in evidence, appellant objected on the ground that the exhibit was incompetent, irrelevant and immaterial, and as having no bearing on the suit. He now contends that the commissioner of highways had no authority to trade in the old equipment for the reason that it was property of the Town of New Salem, and by virtue of secs. 3 and 3.01 of article 4 of the Township Organization Act (pars. 39–39.01, ch. 139, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 133.039–133.039(1)]) could not be sold

or disposed of except by authority of the electors at an annual town meeting. Secs. 3 and 3.01 provide that the electors present at the annual town meeting shall have power to "make all orders for the sale, conveyance, regulation or use of its corporate property that may be deemed conducive to the interests of its inhabitants."

■■■■■ As noted above the commissioner of highways had full power to enter into contracts for the purchase of machinery and equipment with the only limitation being that such contracts in excess of $500 must first receive the approval of the county superintendent of highways. The highway commissioner is a quasi-public corporation and is charged with the duty of maintaining the highways in the township—his contracts are authorized by the statute and his business as such is separate and distinct from the affairs of the town or township. (American Mexican Refining Co. v. Wetzel, 350 Ill. 575, 579; Western Sand & Gravel Co. v. Town of Cornwall, 350 Ill. App. 93, 98.) It is true that a highway commissioner is a statutory officer and can exercise only such powers as are conferred upon him by statute. (Euziere v. Highway Com'r, 346 Ill. 131.) In the latter case the court says, however, at page 134: ". . . Yet a legislative grant carries with it, by implication, the powers necessary to make the grant effective. (People v. Drainage Commissioner, 143 Ill. 417; City of Chicago v. Stratton, 162 Ill. 494; Townsend v. Gash, 267 Ill. 578.) A quasi-public corporation has the implied power to make the contracts necessary to enable it to exercise the powers conferred and to perform the duties enjoined upon it by law. (People v. Spring Lake Drainage and Levee District, 253 Ill. 479.)"

■■■■■ The duties imposed upon the commissioner to maintain the highways in his town, to contract for the necessary machinery and equipment, carry with it by implication, the right to sell and dispose of or trade in

equipment in purchasing new and better tools and equipment with which to perform his duties. If the electors of the town at the annual town meeting had a right to provide for the disposition of machinery and equipment the commissioner then had on hand, he would be unduly handicapped in the performance of his duty. A limitation would thereby be placed upon the officer charged with the maintenance of the highways not contemplated by the statute.

Lastly, it is claimed that the court improperly entered judgment against the defendant in his individual capacity for costs and expense incurred in the mandamus proceeding. No objection was made to the particular items that were incorporated in the judgment.

Section 5 of "An Act to Revise the Law In Relation to Mandamus," ch. 87, Ill. Rev. Stats. 1953 [Jones Ill. Stats. Ann. 109.430] provides: "If judgment is given for the petitioner he shall recover his damages and costs, and a peremptory writ of mandamus shall be granted." The suit here is against Harold A. Hollembeak, supervisor of the Town of New Salem and ex-officio treasurer of the road and bridge fund of said town.

In People v. Edmands, a mandamus proceeding by the people on the relation of the City of Springfield against Edmands, county treasurer, 252 Ill. 108, the court says at page 119: "Finally, it is urged that the trial court erred in rendering a personal judgment against the defendant for costs. By express provision of Section 5 of the Mandamus Act the relator was entitled to recover its costs, and the fact that appellant was an officer did not exempt him. (County of Pike v. People, 11 Ill. 202.) There are cases where proceedings are begun and prosecuted by public officers in their official character, in behalf of the public, where the judgment should be against them for costs in their

official capacity, and the case of People v. Madison County, 125 Ill. 334 was of that nature. The defendant represented no one but himself in refusing to perform a duty enjoined upon him by law, and he was personally and individually liable for costs." That case is decisive of this. The defendant here in his official capacity as treasurer of the road and bridge fund represented no one but himself in failing and refusing to honor and pay the orders, the subject matter of this action.

The judgment of the trial court that a writ of mandamus issue was in conformity with the facts and the law. (People ex rel. Giese v. Dillon, 266 Ill. 272, 276; People v. May, 251 Ill. 54, 57; People ex rel. Bruce v. Dunne, 258 Ill. 441, 446.)

Judgment affirmed.