(No. 24953.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* THE TAYLORVILLE SANITARY DISTRICT *et al.* Appellees.

*Opinion filed April 14, 1939.*

JOHN W. COALE, for appellant.

DANIEL H. DAILEY, City Attorney, HERSHEY & BLISS, and AMOS H. PINKERTON, for appellees.

Mr. Justice Gunn delivered the opinion of the court:

The People of the State of Illinois commenced suit to foreclose a lien of the general taxes on certain parcels of real estate in the city of Taylorville, Illinois, on behalf of the general taxing bodies, being the State, county, city, etc., under the statute, (Ill. Rev. Stat. 1937, chap. 120, par. 238,) which provides for such foreclosure whenever the taxes shall have been forfeited to the State for two or more years. Appellant claimed it was entitled to priority in lien over every outstanding interest or lien whatever. Appellees the Taylorville Sanitary District, as trustee for its bondholders, and the city of Taylorville, as trustee for the bondholders of a paving district, filed answers denying appellant was entitled to priority in lien, and asserting that the liens of the unpaid special assessments of the drainage district and the city of Taylorville were on a parity and equal with that of appellant. The circuit court held that the liens of appellant and appellees were equal and entered a decree accordingly. The suit is one in which the State is interested and which relates to the revenue and, therefore, the appeal is brought directly to this court.

The principal question involved in the appeal is whether the lien of the People for general taxes levied under the Revenue act is prior and superior to the lien created by local improvement and drainage proceedings assessments.

On September 27, 1927, a judgment was entered in the county court of Christian county, confirming an assessment, payable in ten instalments, filed by the Taylorville Sanitary District, which became a lien upon all the property in said district, including the property involved in this case at that time. The first two instalments were paid and the last eight returned delinquent, and at the time of filing the suit herein were due and unpaid. The same lots were made subject to a judgment in a special assessment proceeding for paving, upon the petition of the city of Taylorville,

entered on August 27, 1927, in said county court, payable in ten instalments. The first and second of such instalments were paid and the remaining eight instalments returned delinquent, and at the time of filing suit herein were unpaid.

The general taxes assessed upon the lots in question were unpaid for the years 1929 to 1936, inclusive. Each year the lots were advertised for sale by the county treasurer and not sold but forfeited to the State of Illinois for each of said years. The complaint to foreclose the tax lien was filed on November 17, 1937, for the purpose of having the property sold to pay the lien of the general taxes, only, and to declare the lien of the two special assessment judgments subject and inferior to the lien of general taxes, and to have any money realized from a sale under such foreclosure payable first in discharge of the general taxes. Pertinent sections of the constitution and the statutes applying to this proposition are as follows:

Section 9 of article 9 of the constitution of 1870 reads as follows: "The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise," etc. Section 31 of article 4 of the constitution provides: "The General Assembly may pass laws permitting owners of lands to construct drains, ditches and levees for agricultural, sanitary or mining purposes, across the lands of others, and provide for the organization of drainage districts and vest the corporate authorities thereof, with power to construct and maintain levees, drains and ditches, and to keep and repair all drains, ditches and levees heretofore constructed under laws of this State, by special assessments upon the property benefitted thereby."

Under the Local Improvement act, referring to the judgments of the county court confirming an assessment roll the statute provides: "Such judgments shall be liens on behalf

of the municipality making the improvement, for the payment of which said special tax or special assessment is levied, on the property assessed from the date thereof, to the same extent and of equal force and validity as a lien for the general taxes until such judgments are paid or the property against which any such judgment is entered is sold to pay the same." (Ill. Rev. Stat. 1937, chap. 24, par. 758.) Under the Drainage act provision is made for the levying of assessments in the following language: "The proceedings for making, levying, collecting and enforcing of any special assessment levied hereunder, the letting of contracts, performance of the work, and all other matters pertaining to the construction and making of the improvement shall be the same as nearly as may be as is prescribed in an act entitled, 'An act concerning local improvements,' approved June 14, 1897, and amendments thereto," etc. (Ill. Rev. Stat. 1937, chap. 42, par. 439.) After providing that the drainage assessments may be divided into instalments the act says: "The said several instalments shall bear interest at a rate of not to exceed six per cent per annum; both principal and interest shall be payable, collected and enforced as they shall become due in the manner provided for the levy, payment, collection and enforcement of such assessments and interest, as provided in said act of the General Assembly entitled, 'An act concerning local improvements.'" Ill. Rev. Stat. 1937, chap. 42, par. 440.

From the foregoing provisions of the constitution and the statutes relating to local improvements and drainage, it appears that not only did the constitution grant authority to said municipalities to levy special assessments or special taxes but also the legislature intended that collection should be enforced under the provisions of the Revenue law.

There was no constitutional provision permitting special taxation or special assessments for local improvements by cities or special assessments by drainage districts, prior to the constitution of 1870. The general Revenue act of 1872

contains a section defining certain of the terms used throughout the statute, among which, substantially, are as follows: (4th) Collector means "county, town, district and deputy collectors." (14th) Tax means "any tax, special assessments or costs, interest or penalty imposed upon property." Ill. Rev. Stat. 1937, chap. 120, par. 277.

Since the constitution, adopted two years before this statute, had authorized the levying of special assessments, the enactment of paragraph 277, *supra,* indicates clearly that the legislature intended the use of the word "taxes," in the extension, collection and sale under the Revenue act, to include special assessments as well as general taxes.

When it comes to making up the delinquent list and entering judgment for sale and selling, no distinction is manifest between general taxes and special assessments. Paragraph 166 of chapter 120 provides for general taxes and special assessments to be returned delinquent to the collector. Paragraph 176 makes it necessary for the collector to put upon the delinquent list not only general taxes but special assessments. When it comes to entering judgment, the law provides that it shall be for such taxes, special assessments and penalties, (par. 179,) and when sale is finally made it must be to the person bidding the amount of tax and special assessment due with the least percentage thereon as penalty, (pars. 187, 188,) and if it does not sell for such minimum amount, such property is forfeited to the State of Illinois. (par. 189.) Paragraph 238 provides that "the taxes upon real property, together with all penalties, interests and costs, that may accrue thereon, shall be a prior and first lien on such real property, superior to all other liens and encumbrances * * * which lien may be foreclosed in equity in any court of competent jurisdiction, in the name of the People of the State of Illinois, whenever the taxes for two or more years upon the same description of property shall have been forfeited to the State," etc. This provision of the statute was enacted at the same time

as paragraph 277, *supra,* in which the term "taxes" was defined and, therefore, by legislative mandate, included special assessments, costs, interest or penalties. Since the term "taxes" as used in the paragraph authorizing a suit to foreclose lands forfeited to the State is declared by the statute itself to include special assessments, it is difficult to see any room left for construction.

In the case of the *Wabash Eastern Railway Co.* v. *East Lake Fork Special Drainage District,* 134 Ill. 384, the nature of the lien created by special assessments of a drainage district was under consideration, the court saying, at page 399: "Special assessments are a species of taxation peculiar in their nature it is true and subject to special rules. But the power to levy them is clearly referable to the taxing power. As said by Judge Cooley in his treatise on taxation 'that these assessments are an exercise of the taxing power has over and over again been affirmed until the controversy must be regarded as closed.' * * * It follows that the lien given by the statute in case of such assessments is of the same nature and subject to the same general rules as that given in case of general taxes."

From the foregoing provisions of the statute we are unable to discover any provision that gives priority to the lien of general taxes over those of special assessments, but on the contrary the intention of the legislature seems to be clear that there shall be no priority of one over the other.

The suggestion is made by appellant that a statutory provision, making the lien of special assessments of equal force and validity to the lien of general taxes is invalid. We find no support for this contention. The general rule laid down in 61 Corpus Juris, at page 932, is to the effect that, subject to constitutional provisions, the legislature may, in its discretion, determine what priority, if any, shall be given to general taxes over special assessments or may declare them to be on a parity. To the same effect are *Gould* v. *St. Paul,* 120 Minn. 172, 139 N. W. 293, *Seattle*

v. *Everett*, 125 Wash. 39, 215 Pac. 337, *Scandinavian Amer-
ican Bank* v. *King County*, 92 Wash. 650, 159 Pac. 786,
*Guinn* v. *McReynolds*, 177 Cal. 230, 170 Pac. 421, and
*In re Wyley Co.* 292 Fed. 900.

We are, therefore, of the opinion that the liens of the
general taxes and of the special assessments involved in this
suit are on a parity and equal, with no preference or priority
of any one over the other.

Appellant has cited a number of cases which point out
the general distinction between the lien of general taxes and
the lien of special assessments, but all of these cases were
applied where an exemption was sought from the payment of
special assessments on property, because of exemption from
taxation granted to municipal corporations, religious or
charitable institutions, but such cases have no bearing upon
the right of the legislature to fix the relative priorities be-
tween general taxes and special taxes and special assessments.

In view of our opinion that there is no priority of lien
under the statute between the taxes herein discussed, it be-
comes unnecessary to pass upon the so-called inverse rule
of priority, under which the last tax lien in point of time
is first in right. The statute clearly contemplates there will
be but one sale, and that for the total amount of the gen-
eral taxes and special assessments certified as delinquent,
and in case there is no sale the property is forfeited to the
State. When suit is brought to foreclose the lien of the
taxes so forfeited, there is but one sale to realize the amount
then due under the several forfeitures, and the proceeds are
divided *pro rata* among the several taxing bodies to which
the liens accrue. Since there is but one sale and a distribu-
tion of the proceeds, there is no room left for the application
of the inverse rule of priority, since it could only be appli-
cable in the case of more than one sale.

The inverse rule of priority is negatived by the statute
which provides that if the purchasers of any real estate sold
for taxes or special assessments shall suffer the same to be

forfeited to the State or again sold before the expiration of the second annual sale, thereafter such purchaser shall not be entitled to a deed until the expiration of a like term from the date of the second sale, but in case of redemption the first purchaser is only entitled to the actual amount of money paid without interest or penalties. (Ill. Rev. Stat. 1937, chap. 120, par. 197.) Under our statute only one tax deed can issue and, in case of redemption, the only preference provided is that of the second purchaser who receives his interest and penalties while the first purchaser, who does not protect his purchase, receives only the amount paid at the first sale. In our opinion the judgment of the circuit court was correct and its judgment is, therefore, affirmed.

*Judgment affirmed.*