(No. 26561.—

THE PEOPLE OF THE STATE OF ILLINOIS *vs.* HELEN B. AN-
DERSON *et al.*, Appellants.—(THE VILLAGE OF LANSING
*et al.*, Appellees.)

*Opinion filed June 11, 1942—Rehearing denied Sept. 17, 1942.*

LEONARD C. MEAD, and HOWARD B. BRYANT, (TOLMAN & MEGAN, of counsel,) for appellants.

THOMAS J. COURTNEY, State's Attorney, (MARSHALL V. KEARNEY, JACOB SHAMBERG, and BRENDAN Q. O'BRIEN, of counsel,) for the People, appellee; O. I. LEWIS, for appellee the Village of Lansing.

Mr. JUSTICE GUNN delivered the opinion of the court:

May 28, 1941, a decree was entered by the circuit court of Cook county approving and confirming the sale of real estate located in the village of Lansing for delinquent and forfeited general taxes and special assessments. June 25, 1941, a motion by defendants to vacate the decree was overruled. From this decree and the order overruling the motion to vacate, defendants who are all holders of bonds and vouchers issued by the village to anticipate the collection of the special assessments sought to be foreclosed have prosecuted this appeal. A direct appeal lies to this court. *People* v. *Taylorville Sanitary District,* 371 Ill. 280.

The complaint to foreclose the lien of the general taxes was filed by the State's Attorney of Cook county. The village of Lansing, having been made a party to the pro-

ceeding, filed its answer and a cross-bill pursuant to resolution of the village board, setting up certain special assessment proceedings and asking that the holders of bonds and vouchers be made parties defendant and the property sold for the delinquent and forfeited special assessments. It appears from the record that there are approximately eight thousand lots located in the village of Lansing, improved with about 1200 buildings; that about 6500 of the vacant 6800 lots are now delinquent as to special assessments and general taxes; and that the real estate in question was delinquent as to general taxes for the years 1932 and 1938, and forfeited for general taxes for the years 1930, 1931, 1933, 1934, 1935, 1936 and 1937; that all of the special assessments were confirmed in 1925 to 1929 and were payable in ten annual installments with the exception of one which was confirmed in 1939 and was payable in a single installment. The total delinquency for both general taxes and special assessments was $63,833.06, of which $6869.43 was for general taxes and $56,963.63 for special assessments. A decree entered on October 18, 1940, ordered the sale of the property consisting of 129 lots for non-payment of both general taxes and special assessments. Sale was had November 22, 1940, and the report presented to the court. Defendants, on December 23, 1940, filed objections on the ground that the publication notice was insufficient; that the village had not performed its function as trustee for the bondholders, and that the sale price was so grossly inadequate as to be fraudulent. The court, on January 17, 1941, after affording defendants the opportunity to bid a larger amount, overruled their objections. On May 28, 1941, the court approved the sale of November 22, 1940, as to all lots with the exception of eight the sale of which had, on February 6, 1941, on motion of the village of Lansing, been vacated. The sale price of the 121 lots remaining was $3553. Costs of the foreclosure proceeding in the sum of $228.38 and "costs and redemption fees"

assessed against each tract for prior years' tax sales amounting to $2275.40 were also deducted from the amount of the sale, thus leaving a balance for distribution of $1049.22 which was distributed as follows: $936.32 to the village for special assessments, $35.65 for penalties, interest and costs, and $77.25 to principal of taxes. Defendants' motion to vacate the decree approving the report of sale, in addition to the grounds of their objection to the report of sale, urged that the item for costs and redemption fees was invalid and attacked the order of distribution. The motion was overruled on June 25, 1941. This appeal followed. The village of Lansing did not assign cross-errors and has elected to stand on the decree of the circuit court.

To reverse the decree confirming the sale, it is first contended by defendants that the sale price was so grossly inadequate as to be fraudulent as to them and that the chancellor abused his discretion in approving this sale. The 121 lots were bid in at varying prices, as follows: Six for $10 each, fifty for $15 each, one for $22, sixty-three for $40 each, and one for $201. To establish a market value defendants introduced the testimony of two real estate experts. It is conceded the testimony of both these witnesses was based entirely on the immediate use of the vacant property for building purposes. Both testified the value of the lots was $15 per front foot, one of them valuing some of the lots $2 or $3 lower per front foot. Taking the lowest figure, a value of $300 would be established for a twenty-five-foot lot, and, on this basis it is argued that the sales for $1 were so utterly inadequate that the village voluntarily dismissed the proceeding as to them and that the sales at $10 to $40 per lot represented only a small fraction of their true value. Admittedly, at a sale of this sort the full market price cannot be procured unless some one really wants the land, but it is insisted the facts shown by the record establish that the prices at which the property was sold are so grossly inadequate as to shock the conscience,

and that where the property is sold at such a low price, this fact alone is sufficient to require the chancellor to refuse to approve the sale.

Defendants admit that the proposed sale of lots was published in conformity with the decree of foreclosure and that the *Chicago Recorder,* a weekly of general circulation published in Chicago and the paper in which publication was had, is a recognized legal publication. It also appears from the affidavit filed by one of the attorneys for the village that prior to the sale there were articles in the *Chicago Daily News* and in the *Lansing Journal,* a newspaper of general circulation published weekly in the village, concerning this foreclosure sale; that the attorneys for defendants were notified by telephone of the first date of publication for the sale of the lots and knew the date, hour and place the sale was to take place, and that one of the attorneys for the defendants appeared at the sale in person, was continuously present at all times during its progress, and did not offer a bid for any lot or combination of lots sold. It also appears from the record that the attorneys for defendants were offered an opportunity by the chancellor to make a better bid for the real estate involved herein, and an order entered January 17, 1941, finds that they were unable and unwilling to make any further or better bid for the real estate.

The primary purpose of tax foreclosure proceedings is to clear up hopeless tax delinquency and to put the property again on a tax-paying basis. The statute is remedial. (*People* v. *Straus,* 355 Ill. 640.) It was never intended that the sale be required to be for the full amount of the lien foreclosed. (*French* v. *Toman,* 375 Ill. 389.) Where a foreclosure sale is made at public auction for cash to the highest bidder and in the manner prescribed by the statute, the presumption obtains that the property has produced its entire value. (*Ogle* v. *Koerner,* 140 Ill. 170.) Mere inadequacy of price is no reason for upsetting a judicial sale

unless there are other irregularities. (*Straus* v. *Anderson*, 366 Ill. 426; *Magnes* v. *Tobias*, 337 id. 605; *Block* v. *Hooper*, 318 id. 182.) The rule that judicial sales will not be set aside because of inadequacy of price in the absence of proof of fraud or some irregularity in the sale has been applied by this court to tax foreclosure sales on the principle that stability should be given judicial sales. (*Straus* v. *Anderson, supra.*) The rule is firmly established that the chancellor possesses a broad discretion in approving or disapproving a report of sale, and that his decision will not be disturbed unless there is a clear abuse of discretion. (*Ryerson* v. *Apland*, 378 Ill. 472.) The requirements of the statute as to publication having been met in this instance, there being no evidence in the record of any fraud in conducting the sale herein or of any other irregularity in the sale, and the defendants having produced no evidence as to what price might be bid should a second sale be held or that any greater proceeds would be realized at such sale, it cannot be said that the chancellor abused his discretion in approving the sale herein. Obviously, sales in tax foreclosures differ from those in foreclosures on a defaulted note secured by deed of trust, in that in the latter it is possible to use the bonds in making a bid, the only cash outlay required being the *pro rata* amount to be paid to the nondepositing bondholders, whereas in tax foreclosure sales the bids are all cash.

It is next urged by defendants that the village failed to perform its duties as trustee for the bondholders, in that it instigated all the proceedings to foreclose; did not object to the bids or sales; and that the burden of contesting the inadequacy of the bids was allowed to fall upon the bondholders, who were scattered and could not raise funds to handle a real estate operation of this size, thus accounting for their inability to bid a higher price. They also argue that while the publication was in conformity with the decree of foreclosure and in a paper recognized as a legal pub-

lication, it is not such a publication as is likely to produce substantial bids. Sections 73 and 90 of the Local Improvement act (Ill. Rev. Stat. 1939, chap. 24, pars. 777 and 799) are adverted to and it is argued that a mandatory duty is imposed on the municipality to take every step and exert every effort to collect the assessment and carry out the purpose of the statute; that the village has a clear duty to obtain as near the full value of the property foreclosed as possible, and to protect the bondholders and not allow their rights to be "washed out" by a foreclosure proceeding of this type. In short, it is contended that the failure of the village of Lansing to sufficiently publicize the sale and its failure to object to the bids rendered the village derelict in its duty, and presented a situation calling upon the chancellor to refuse to approve the sale. It is now urged a duty devolves upon the village to protect the lien of the special assessment bonds in cases where it is claimed an inadequate price is bid at the sale, to the extent of withdrawing such property from the sale until a time when a bid more commensurate with the claimed value of the property may be obtained.

Section 86 of article 84 of the Cities and Villages act (Ill. Rev. Stat. 1941, chap. 24, sec. 84-86, p. 511) designates the form of bond to be used by municipalities when issuing special assessment bonds, which form is in part as follows: "this bond and the interest thereon are payable solely out of said installment when collected." Section 73 of article 84 (Ill. Rev. Stat. 1941, chap. 24, sec. 84-73, p. 507) provides: "Except as otherwise provided in section 84-83a, no person taking any contracts from the municipality and agreeing to be paid out of special assessments or special taxes, has any claim or lien upon the municipality in any event, except from the collection of special assessments or special taxes made or to be made for the work contracted for." Section 90 of article 84 of the Cities and Villages act (Ill. Rev. Stat. 1941, chap. 24, sec. 84-90)

provides: "No person accepting the vouchers or bonds as provided in this article shall have any claim or lien upon the municipality in any event for the payment of his vouchers or bonds or the interest thereon, except from the collection of the assessment against which the vouchers or bonds are issued." In *Rothschild* v. *Village of Calumet Park*, 350 Ill. 330, this court said: "The installments are the only source of payment of the bonds, and when they are collected by the municipality the money received becomes a trust fund for the payment of the bonds to the holders without preference among them. If for any reason the full collection of an installment is not made the deficiency must fall upon the bondholders, and equity requires that the loss shall be borne ratably by each bondholder."

It thus appears that a village issuing bonds to anticipate the collection of special assessment funds occupies a position similar to that of trustee as to any moneys actually collected on the special assessments, and that the moneys realized from those collections constitute the sole and entire fund to which the holders of bonds shall look for payment. The ownership of the lien is in the municipality, not in the holders of bonds or vouchers, and the municipality is under a duty, which the bondholders may compel it to perform, to use all lawful means, including foreclosure, to collect the taxes out of which the bondholders are to be paid. There is no requirement that bondholders be made parties to any such proceedings. (*Village of Lansing* v. *Sundstrom*, 379 Ill. 121.) The village having failed through ordinary methods to collect the special assessments, availed itself of one of the statutory methods provided by filing its cross-complaint in this suit, seeking to foreclose the lien of such special assessments, and having complied with the requirements of the statute in every respect, was under no duty because of an insufficient bid or bids, to withdraw the property from the sale in order to protect

the bondholders. The bondholders were represented at the sale, which was duly advertised in a legal publication, and failed to participate therein, and, when offered an opportunity by the chancellor to bid higher, refused so to do. Under these circumstances, the village did all that was required and there was no dereliction of duty on its part nor abuse of discretion on the part of the chancellor in approving the sale.

The final decree of the court ordered that $229.38 expenses and costs incurred in the foreclosure proceeding be taxed as costs, and to this order no objection was made. It also decreed that the sum of $2275.40 costs and redemption fees charged in the proceedings of delinquency and tax sale for several years prior to the proceeding for foreclosure be also taxed as the costs in the foreclosure case, and thus out of a total sale of $3553 the net sum of $1049.22 was ordered distributed by the collector *pro rata* to the several funds as the amount derived from such sale for said purpose. This decree is claimed to be erroneous in ordering the costs of the tax sales made by the county collector for the several years prior to the filing of the proceeding to foreclose the tax liens to be taxed as costs in the lien foreclosure proceeding, and thus ordering paid in full out of the sums derived from the sale the costs charged against each tract of property in the prior proceedings of delinquency and tax sale.

When real property becomes delinquent by reason of failure to pay taxes the county collector is required to take certain steps preliminary to judgment and sale, and certain items are authorized to be taxed and collected as costs of such tax sale. Thus the collector is allowed twenty cents per item for sending out to the owner notice by registered mail. (Ill. Rev. Stat. 1935, Bar Ed. chap. 120, sec. 186, par. 204.) He also shall charge a fee of three cents per item for making up the delinquent list for judgment, and three cents per item for making up the delinquent list for

the printer. (Ill. Rev. Stat. 1935, Bar Ed. chap. 53, sec. 21, par. 35.) The county clerk is authorized to charge four cents per item for entering judgment, (Ill. Rev. Stat. 1935, Bar Ed. chap. 53, sec. 3, par. 69,) and a printer's fee of twenty cents per item is authorized; (Ill. Rev. Stat. 1935, Bar Ed. chap. 53, sec. 22, par. 36;) all to be taxed and collected as costs. These items of costs are to be included and entered in a book known as "Tax judgment, sale, redemption, and forfeiture record of the county clerk." Ill. Rev. Stat. 1935, Bar Ed. chap. 120, sec. 200, par. 216.

After the taxes become due it is the duty of the county collector to give notice he will apply to the county court on a specified day for judgment against lands and lots for taxes and *costs*, and for an order to sell said lands and lots for the satisfaction thereof. (Ill. Rev. Stat. 1935, Bar Ed. chap. 120, sec. 182, par. 200.) On the day fixed for application of the judgment it is the duty of the court to examine the list, and the court shall give judgment for such taxes, special assessments and penalties as shall appear to be due, and such judgment shall be considered a several judgment against each tract or lot or part of a tract or lot, and the court shall direct the clerk to make out and enter judgment of sale in the following form: "Whereas due notice has been given of the intended application for judgment against said lands and lots, and no sufficient defense having been made, or cause shown why a judgment shall not be entered against said lands and lots for taxes, (special assessments, if any,) interest, penalties and costs due and unpaid thereon; * * * Therefore it is considered by the court that judgment be and is hereby entered against the aforesaid tract or tracts * * * in favor of The People of the State of Illinois for the sum annexed to each for the amount of taxes and (special assessments, if any,) interest, penalties and costs due severally thereon." (Ill. Rev. Stat. 1935, Bar Ed. chap. 120, sec. 191, par. 209.) After judgment and direction for sale is entered by the clerk the statute provides

the sale may be made to the "person at said sale offering to pay the amount due on each tract or lot for the least percentage thereof as penalty." (Ill. Rev. Stat. 1935, Bar Ed. chap. 120, sec. 202, par. 218.) And if there is no bid on said tract as provided in said paragraph quoted every tract of land or lot so offered and not sold, unless released from sale, shall be forfeited to the State of Illinois. Ill. Rev. Stat. 1935, Bar Ed. chap. 120, sec. 203, par. 219.

After real property has been sold as authorized by statute redemption may be had by the owner "by payment * * * to the county clerk of the amount for which the same was sold, together with the amount of penalty bid at such sale." (Ill. Rev. Stat. 1935, Bar Ed. chap. 120, sec. 210, par. 226.) Since the judgment includes the amount of taxes, interest, penalties and costs the person redeeming must pay this amount plus the penalty in order to redeem from the sale. Provision is also made for the redemption of forfeited property, which requires the payment of the amount of tax due with statutory costs, interest and printer's fees and a penalty of twelve per cent. (Ill. Rev. Stat. 1935, Bar Ed. chap. 120, sec. 227, par. 242.) All of these provisions, except the last quoted, require the land owner in redeeming from the judgment to pay costs, interest and printer's fees as a part of the judgment entered against each tract or parcel of property. If the sum due is not realized by the tax sale proceedings the provision for a foreclosure of property forfeited to the State of Illinois for taxes is authorized, in which it is said: "the taxes upon real property together with *all penalties, interest* and *costs* shall be a prior and first lien on such real estate superior to all other liens and encumbrances, * * * which lien may be foreclosed in equity in any court of competent jurisdiction in the name of The People of the State of Illinois," etc. Ill. Rev. Stat. 1935, Bar Ed. chap. 120, sec. 253, par. 268.

It is thus clear from the express provision of the statute that the lien to be foreclosed is the lien for the total amount of the taxes, penalty, interest and costs as one sum, and there is no provision in the statute which authorized a lien of one kind for the amount of the taxes, and a prior and separate lien for the amount of the penalty, interest and costs.

The statute also provides that when money is collected by foreclosure of the lien imposed upon the property for taxes, penalties, interest and costs, it shall be paid to the county collector to be distributed by him to the respective authorities entitled thereto, (sec. 253,) and in case the property does not sell for enough to pay the full amount, the collector shall receive credit in his settlement with the custodian of the several funds for which such tax is levied, for the amount not realized from such sale. And the amount received from any such sale shall be paid by the collector *pro rata* to the extent of the several funds entitled thereto. Sec. 203.

There is no authority in the revenue statute for charging as costs in the foreclosure of a tax lien the several amounts charged against each tract of property as costs and printers' fees in previous tax sale proceedings. Costs are purely statutory, and their allowance depends entirely upon the terms of the statute authorizing them. (*Galpin* v. *City of Chicago,* 249 Ill. 554; *Illman* v. *Kruse,* 301 id. 408; *Wintersteen* v. *National Cooperage and Woodenware Co.* 361 id. 95.) As pointed out, the statute requires the distribution of funds realized from the foreclosure of the tax lien pro rated among the several taxing bodies, and we have held that the lien of the several taxing bodies on real estate is equal. (*People* v. *Taylorville Sanitary District,* 371 Ill. 280.) To allow the previous costs to be deducted from the amount of money realized in the foreclosure sale would violate not only the provision of the

statute for the *pro rata* distribution of the funds realized from such sale, but would also permit the lien of the county to be superior to the lien of the other taxing bodies, for we have frequently held that fees earned by county officers belong to the county. (*Jones* v. *O'Connell,* 266 Ill. 443; *People* v. *Witzeman,* 268 id. 508.) Thus by deducting from the amount of the foreclosure sale the costs accruing in the previous tax sales would give a priority to the county over the other taxing bodies by the amounts earned from the county clerk and the county collector.

It is anticipated that if a foreclosure of a tax lien is sought under the statute the sale of the property may realize less than the full amount of tax, interest, penalties and costs accruing against each several tract. (*French* v. *Toman,* 375 Ill. 389.) With the statute clear that the lien to be foreclosed is one which includes the amount of the tax as well as the amount of the costs, and the provision that the amount realized must be distributed *pro rata,* it is apparent the legislature never intended there should be built up a prior lien for costs incurred in previous tax sales, which could easily consume the entire amount realized from the sale.

A tax foreclosure proceeding is one in which the entire amount due of taxes, costs and penalties is considered as one lien, and if the proceeds from the sale are insufficient to pay the entire lien, the amount of the costs being a part of the lien authorized to be foreclosed, may only participate in the sum realized on the same *pro rata* basis as the other taxing bodies. Such a construction not only follows the language of the statute, but also that of our previous holding that the lien of the several taxing bodies against the several tracts of property is equal.

It follows the decree of the circuit court of Cook county in ordering the sum of $2275.40 costs and redemption fees of tax sales previous to the foreclosure of the

taxes in equity, as authorized by section 253, was erroneous, and the decree of the said court is in such respect reversed and remanded, with directions to proceed in a manner not inconsistent herewith, and in all other respects affirmed.

*Affirmed in part, and reversed in part, and remanded.*