(Nos. 28522, 28523, 28524.—

THE VILLAGE OF WESTCHESTER *et al.*, Appellants, *vs.* FRED
E. HOLMES *et al.*, Appellees.

*Opinion filed May 23, 1945—Rehearing denied September 13, 1945.*

KINNE, SCOVEL, ROBSON & MURPHY, (HAROLD F. SCOVEL, of counsel,) both of Chicago, for appellant Village of Westchester.

MARKMAN, DONOVAN & SULLIVAN, (HENRY O. NICKEL, of counsel,) both of Chicago, for other appellants.

BLUFORD, KRINSLEY, SCHULTZ & VOORHEIS, and CUMMINGS & WYMAN, (RAYMOND HARKRIDER, and AUSTIN L. WYMAN, of counsel,) all of Chicago, for appellees.

Mr. JUSTICE GUNN delivered the opinion of the court:

May 9, 1944, the village of Westchester passed three ordinances, and on May 11, 1944, filed three petitions in the county court of Cook county to extend and refund certain special assessments, the same being assessments Nos. 15, 23 and 38 of said village. This was not done voluntarily, but under compulsion by writ of *mandamus* issued by the circuit court of Cook county and affirmed by the Appellate Court for the First District. (321 Ill. App. 644.)

For convenience, the village of Westchester will be referred to as the "village," the Chicago Title and Trust Company, as trustee for Loewenthal *et al.*, the "trustee," Fred E. Holmes *et al.*, as the "Holmes objectors," and Knight Blanchard *et al.* as the "Blanchard objectors."

The trustee is the holder and owner of many bonds issued in said assessment proceedings as trustee for divers individuals, and is interested in compelling the extension and refunding of said assessments under section 86a of the Local Improvement Act. (Ill. Rev. Stat. 1943, chap. 24, par. 84-86a.) Appellees, the Holmes objectors and the Blanchard objectors, are purchasers of lots included in said assessments 15, 23 and 38 under tax foreclosure of general taxes and special assessments, or owners of lots included in said assessments, or are involved in said assessments or foreclosure proceedings, or otherwise, as bondholders or holders of anticipation warrants. The record shows that appellant trustee was active in compelling the village to adopt refunding ordinances, and in filing the proceedings in the county court, and that appellees were active in objecting to an order being entered by the county court for the purpose of refunding and extending such assessments. The county court sustained the objections of appellees, and, among other reasons, held that to grant the petition would give to the refunding provision an unconstitutional effect.

Under the conditions presented here the trial court necessarily passed upon the validity of the statute in question so far as it purposed to authorize extension and refunding of special assessments, and also construed the constitution of the State of Illinois as applying to the right of the court to grant the petition, thus giving us jurisdiction of a direct appeal to this court.

The facts are somewhat complex. It appears that the village of Westchester, located in Cook county, was organized in 1925, and had been subdivided into more than eight

thousand parcels for real estate taxes and special assessment purposes. Commencing in 1926 the village made various local improvements, some seventy in number, costing in the aggregate approximately $4,500,000. The assessments involved in this case were included among that number. Bonds were issued payable in installments ranging from two to ten in number, bearing six per cent interest. Prior to May, 1932, the village had issued in all these proceedings installment vouchers, special assessment bonds and general vouchers of over $4,400,000. Substantial amounts of the principal of bonds and interest and general taxes were unpaid and became delinquent. The trustee represents bondholders holding bonds payable out of assessments 15, 23 and 38, which constitute approximately six per cent of the total Westchester special assessment securities outstanding.

Between 1928 and 1930 the real property of the village began to depreciate in value. The taxes and assessments on a large percentage of the lots in Westchester for the year 1928 and subsequent years became delinquent to the extent that the principal of unpaid real-estate taxes with accrued interest and penalties, and the principal of special assessments with interest and penalties, aggregated over $5,700,000, so that the average amount of delinquency on each lot for general taxes amounted to $220, and for special assessments something over $700.

After a conference with the local corporate authorities the People of the State of Illinois in May, 1941, by its State's Attorney, filed a number of complaints to foreclose the delinquent general real-estate taxes for 1928 and subsequent years. This included the property subject to the lien of the assessments here in controversy. The village, through its attorney, filed answers and counterclaims, alleging that the liens of the special assessments were equal and coextensive with the liens of the general real-estate taxes, and prayed for an accounting and foreclosure of

the liens of the special assessments, including those here involved, and for a prorata share of the money derived from such sale.

The trustee, representing bondholders in assessments 15, 23 and 38, July 23, 1940, filed with the village three refunding petitions relating to said assessments and asked that the unpaid interest thereon aggregating over seventy per cent be added to the principal, and the resulting amount be divided into ten installments payable in the future, with six per cent interest per annum. These petitions were based upon the act of the general legislature of 1935 adding section 86a to the Local Improvement Act, which authorized any municipality, upon the petition of seventy-five per cent of holders of securities out of any special assessment, to pass the necessary ordinance and institute the necessary court proceedings for the purpose of obtaining the judgment of the court as to whether the special assessment involved should or should not be extended and refunded.

The village and its corporate officers declined to take any action pursuant to the refunding petition, and thereupon the trustee commenced *mandamus* proceedings in the circuit court of Cook county against the village and its officials, which was dismissed upon motion. Upon appeal to the Appellate Court for the First District the judgment of the circuit court in the *mandamus* proceedings was reversed. (310 Ill. App. 498.) Later a petition was filed in this court to compel the Appellate Court to expunge such orders and transfer the case to this court. This we denied November 24, 1941. (*People ex rel. Village of Westchester* v. *O'Connor,* 378 Ill. 249.) Thereafter the *mandamus* case was tried in the circuit court and an order entered allowing the writ, which was appealed to this court and transferred to the Appellate Court, (*Hardin* v. *Village of Westchester,* 383 Ill. 624,) and thereafter affirmed by the Appellate Court. 321 Ill. App. 644.

The question involved in this case therefore is the correctness of the judgment of the county court denying the petition of the village to extend and refund the delinquent special assessments Nos. 15, 23 and 38, filed in accordance with the writ of *mandamus*.

It further appears that in the interval between the filing of the tax foreclosure suits upon behalf of the People and the filing of the petitions for refunding by the village, foreclosure sales for defaulted general taxes and special assessments have been made and confirmed in tax foreclosure cases, in which over three thousand lots or parcels of land have been sold to various purchasers for amounts aggregating more than $645,000; that all of the lots or parcels had been sold free of the liens of all of the Westchester special assessments, including special assessments 15, 23 and 38, and that over four hundred parcels out of the parcels in said three special assessments, which the trustee sought to have refunded and extended in the county court, had been sold at the tax foreclosure sales to various purchasers, free and clear of said special assessments.

The appellants contend that they had the absolute legal right, upon compliance with the provisions and conditions of section 86a of the Local Improvement Act, to have said special assessments extended and refunded. On the other hand, the appellees contend that if said assessments were extended and refunded it would give an unconstitutional effect to section 86a, in that if refunding bonds were issued for such assessments they would be given a preferred position to that of the holders of other tax liens upon the property for which assessments had been extended and refunded. Appellees further contend that, since the special assessments had been in default for several years prior to the enactment of section 86a, to so construe it as to place the holders of refunded special assessments in a better relative position than the holders of other tax liens would also give it an unconstitutional

effect. The refunding petition, as indicated above, was denied.

At the outset, we may observe that while the village of Westchester appears as one of the appellants it has nevertheless filed a brief in which it states it believes the order of the county court is in all respects proper and correct, and desires it affirmed. Counsel give as their reason that in all of the proceedings prior to the granting of the writ of *mandamus* they had actively resisted the attempt to have said assessments refunded, but after the *mandamus* order the corporate officers became obligated to institute the proceedings in the county court to obtain the judgment of said court upon whether such special assessments should be extended; that the order was complied with, and the trustee sought to intervene as a party who desired to prosecute the proceeding for or in behalf of the village, and that it was only at the request of the trustee, after the order of the county court dismissing the refunding petitions had been entered, that the village consented to appear in this appeal as an appellant; and that notwithstanding it believes the action of the county court is proper and correct, it, nevertheless, believes the bondholders, who are the real parties in interest, should have an opportunity to present the matter to this court; and that it was only because of the doubt as to whether or not the bondholders had a right to appeal that the village had joined herein for the purpose of getting the matter before this court.

This leads us to examine appellees' claim that the trustee has no right to appeal from the order of the county court denying the petition of the village to extend and refund the assessments. In *Village of Bellwood* v. *Hunter & Co.* 375 Ill. 627, a lot owner and bondholder was permitted to object to and appeal from an order authorizing an extension and refunding under section 86a. Section 81 of the Civil Practice Act (Ill. Rev. Stat. 1943, chap. 110, par. 205,) among other things provides: "The right here-

tofore possessed by any person not a party to the record to review a judgment or decree by writ of error shall be preserved by notice of appeal." We have held under this section of the Practice Act that one not a party to the record has a right to appeal if it appears he has been injured by the judgment rendered, or will be benefited by its reversal, or is competent to release errors. *People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236; *Lenhart* v. *Miller,* 375 Ill. 346; *People ex rel. Altorfer* v. *City of Peoria,* 378 Ill. 572.

The trustee would be benefited if the judgment was reversed, because it would hold refunded bonds having a lien for the full amount of principal and unpaid interest, while the general and other tax liens have been foreclosed for an amount much less than that due thereon. Furthermore, since the village has filed a brief asserting it desires the judgment of the county court affirmed and would not have appealed except upon the insistence of the trustee, we believe the latter would have the right to release errors. We, therefore, hold that the trustee, under the facts disclosed herein, had a right to prosecute this appeal.

Appellants contend that the petitions for refunding and extension filed in the county court by the village were in proper form and complied with the requirements of section 86a, and thereupon it became the duty of the county court, upon proof of these facts, to enter a judgment approving the extension and refunding of the assessments extended without consideration of any other factor affecting other liens upon the property. It is also claimed all constitutional objections to the refunding of these particular assessments have been settled and decided by the previous decisions of this court affecting the special assessments of the village of Westchester.

A reference to the cases cited does not bear out this contention. In the last of the series, *Hardin* v. *Village of Westchester,* 383 Ill. 624, where we referred to the previous

litigation concerning this village, we said: "This court cannot see any reason for denying the writ of *mandamus* merely because a tax-foreclosure proceeding has been instituted during the pendency of this suit, inasmuch as the only relief asked in the original petition was that the village pass the ordinance and file the petition for the refunding and the extension. By the circuit court's order ordering the village to pass such an ordinance and to file such a petition, it has not in any way passed upon the right of the bondholders to have the bonds refunded and the assessments extended. It has merely ordered the village and its authorities to do something which the law compelled them to do. This court can see that some questions will arise as to the propriety of refunding the bonds and extending the assessments, but that is a matter over which the village and its officials have nothing to say, since the act required them to perform certain acts upon being petitioned by 75 per cent of the bondholders. The village has, in this case, attempted to substitute its opinion for the opinion of the county court and has by this appeal endeavored to have this court prejudge the case for the county court and to take away from the county court its right to pass upon the refunding and the extension proceedings." After so holding, the case was transferred to the Appellate Court, and there the judgment of the circuit court ordering a writ of *mandamus* to issue was affirmed. Thus, by the express language of the *Hardin case,* the village was only required to do the things which, under section 86a were necessary to enable the county court to pass upon the question committed to its jurisdiction by the legislature.

There is not the slightest intimation in this or any of the previous cases affecting these proceedings which holds that, upon compliance with the jurisdictional features required by section 86a of the Local Improvement Act, it thereupon becomes necessary as a matter of law that the

court order the extension and refunding. If the statute were so construed it would hardly be necessary to go through the formalities of notice to the parties and have a hearing, because the relief would not be predicated upon any other fact than the desire of the bondholders represented by a sufficient petition and the delivery of the remaining bonds. Such a position fails to take into consideration that other persons or bodies may have such rights in the property covered by the assessments and that such an extension and refunding would have a prejudicial effect upon them. The statute does not require the judge to so act. It says that upon a hearing the court "may extend the time of payment," but does not require that it be done. We think section 86a gives the county court jurisdiction to not only determine whether the village has complied with the provision of section 86a, but also whether, under the conditions presented in the particular case, the interested parties would be eligible to the benefits of the act without violating the constitutional rights of others.

We have held that the liens of general taxes against real estate and of special assessments levied by cities or other municipalities are on a parity and equal, with no preference or priority in any one over the other. (*People* v. *Taylorville Sanitary District,* 371 Ill. 280; *People* v. *Anderson,* 380 Ill. 158; *Village of Bellwood* v. *Hunter & Co.* 375 Ill. 627.) In construing a statute, the legislative intention must be deduced from a view of every material part taken and construed together, since a statute is enacted as a whole and not in part. (*People ex rel. Barrett* v. *West Side Trust and Savings Bank,* 362 Ill. 607; *People ex rel. Auburn Coal and Material Co.* v. *Hughes,* 357 Ill. 524.) In seeking the intent of the legislature the courts always consider not only the language used but the evil to be remedied and the object to be attained. If the language employed admits of two constructions, one of . which makes the enactment absurd if not mischievous,

while the other shows it to be reasonable and wholesome, the construction which leads to an absurd result should be avoided. *Inter-State Water Co.* v. *City of Danville,* 379 Ill. 41; *Burke* v. *Industrial Com.* 368 Ill. 554; *Winner* v. *Kadow,* 373 Ill. 192.

Section 86a of the Local Improvement Act has been before us several times. In *Thayer* v. *Village of Downers Grove,* 369 Ill. 334, we held that it *was jurisdictional to the proceeding that the requisite number of bonds be deposited. In *Scribner* v. *Village of Downers Grove,* 372 Ill. 614, and *Village of Downers Grove* v. *Harley,* 372 Ill. 586, we held that section 86a of the Local Improvement Act could not be construed so that the refunding of a part of a special assessment would deprive any other bondholder of a vested right. In *Village of Bellwood* v. *Hunter & Co.* 375 Ill. 627, and *People* v. *O'Connor,* 378 Ill. 249, it was held that the liens of the general taxes and special assessments were equal, and that a refunding of a special assessment under section 86a would not give it a preferred and prior lien. In the *O'Connor case* we said that the refunding act could not be construed so as to give bondholders petitioning for an extension and refunding a lien superior to a lien of the general taxes.

From these cases it appears that holders of bonds in special assessments have a right to have delinquent assessments refunded and extended, but that they are given no greater rights with respect to the liens created than the liens of other taxing bodies. In fact we have held that the title or the ownership of the lien is in the municipality, (*Village of Lansing* v. *Sundstrom,* 379 Ill. 121; *People* v. *Anderson,* 380 Ill. 158,) and that the right of the State to a preferential lien cannot be impaired by general legislative enactment, unless such an intent is expressly declared in the statute. *People ex rel. Barrett* v. *Oregon Savings Bank,* 357 Ill. 545.

The *Bellwood case,* however, expressly called attention to the fact that section 86a provides: "Assessments and installments, the time for the collection of which has been extended, shall continue to be a lien on the lands assessed, the same as the original assessments," and held that this indicates one assessment shall not be preferred over another. This holding, together with that of *People* v. *Taylorville Sanitary District,* 371 Ill. 280, indicates clearly that there shall be no relative changes in the position or liens of the taxes of the several bodies levying by reason of a refunding and extension of special assessments under section 86a.

This requires an examination of what change would be effected, if any, by granting appellants' petition. The lots involved in these assessments have a delinquency of approximately $220 for general taxes and approximately $720 for special assessments with interest, or a total lien of $940, which at the time of the filing of the foreclosure suits were liens of equal dignity, permitting the holders thereof to participate *pro rata* from the proceeds of any tax sale. If the property were sold for the full amount of all of the liens nobody could be injured. However, the average sale price of lots free and clear appears to be about $400 each. This would allow the delinquent general taxes approximately two ninths and the special assessments seven ninths of the proceeds. But, by the refunding operation, the owners of bonds could obtain an extended lien for the full amount of their own lien by redeeming from general taxes at the rate of two ninths of the total default. Thus, by the proceeding, the bondholders would obtain a preferred lien for substantially all of their claim, while that of the holder of a tax warrant, or a tax purchaser, only a small portion. The lien of the general taxes is not subject to refunding. The only remedy is to foreclose and sell. The special assessments involved in this case were authorized before the refunding act of 1935 was

enacted, and, if given the construction sought by appellants, would give preferential rights in tax liens to those entitled to file a petition for extension and refunding, and different rights to those holding or owning the liens of general taxes.

As pointed out in *Inter-State Water Co.* v. *City of Danville,* 379 Ill. 41, statutes are not to be construed so as to give them absurd or mischievous effects. It has been held, under many different circumstances, that changes in the relative rights of lienholders will render a law unconstitutional, as, for instance, a statute which prefers a garage keeper's lien, or the lien of an existing chattel mortgage, (*Jensen* v. *Wilcox Lumber Co.* 295 Ill. 294,) or which annuls the power to sell in existing mortgages, (*Fisher* v. *Green,* 142 Ill. 80,) or which gives contractors liens where none existed at the date of the contract. (*Andrews & Johnson Co.* v. *Atwood,* 167 Ill. 249.) So, in *Friedman* v. *City of Chicago,* 374 Ill. 545, we held that authorizing a change in the rights of holders of assessment bonds by authorizing a *pro tanto* cancelation could not apply to bonds issued previous to the statute. And, in *Murray* v. *Village of Skokie,* 379 Ill. 112, a law authorizing the holder of a bond to exchange it for bonds of a lower denomination, giving him a better right to use it for discharge of assessments, was unauthorized. Under these cases, to construe section 86a as requiring a judge to confirm an extension and refunding of an assessment, having the effect on the lien of general taxes as pointed out above, would render it unconstitutional.

The foreclosure of all of the taxes had gone to decree and sale at the time of the commencement of the present refunding. The rights of the parties to the proceeds of the sale had become fixed. We do not say that the refunding of these assessment bonds and their delinquencies before the tax foreclosures would have changed this situation, but certainly the county judge was bound to take it

449

into consideration, and, if possible, avoid results which were not contemplated by the legislature in enacting the refunding statute and which would give it an unconstitutional effect if the petitions of the village had been granted. We think the court acted properly. Our previous construction of the statute, holding it valid and constitutional, did not contemplate the situation brought about by appellants.

Many other interesting features of the case have been discussed, which we have carefully examined and considered but which are unnecessary to comment upon in the decision of this case. It is clear to us that, decree of foreclosure having been entered by the circuit court for all delinquencies of both general taxes and special assessments, the rights of the parties became so fixed that they could not be changed to the detriment of any of them without violating vested rights, and that to permit it to be done under the circumstances existing here would give an unconstitutional effect to section 86a of the Local Improvement Act. The county court was correct in considering this as a proper ground for dismissing appellants' petition.

The judgment of the county court of Cook county is affirmed.

*Judgment affirmed.*