People of the State of Illinois ex rel. David DeDoncker, and Oral Jacobs, Plaintiff-Intervenor, Plaintiff-Appellee, v. The City of East Moline, a Municipal Corporation, Defendant-Appellee. Frank J. Esposito, F. Joseph Ryan, and Ray Westerbeck, Appellants.

Gen. No. 11,284.

Second District, Second Division.

December 16, 1959.

Released for publication January 4, 1960.

F. Joseph Ryan, of East Moline, and Moran, Klockau, McCarthy, and Johnson, of Rock Island, for defendants-appellants.

John M. Kerwin, of East Moline, Isador I. Katz, of Reidy, Katz, McAndrews, Durkee, and Telleen, of Rock Island, Dan Howard McNeal, of Moline, for plaintiff-intervenor, plaintiff-appellee, and appellee City of East Moline.

JUSTICE CROW delivered the opinion of the court.

This case was commenced on November 18, 1958, by the filing of a petition in the name of the People on the relation of David DeDoncker for a writ of mandamus seeking to compel the defendant City of East Moline, a municipal corporation, to abide by the result of a municipal election held on April 16, 1957, which result was for the abandonment of the managerial (city manager) form of municipal government, and to comply with Ch. 24, Ill. Rev. Stats., par. 20—13, and such other parts of the Revised Cities and Villages Act, Ch. 24, par. 1—1 ff as may be applicable thereto. The defendant City of East Moline filed an answer to the petition admitting the allegations thereof but denying that a writ of mandamus should issue and setting forth certain alleged affirmative matters. The petitioner filed a reply to those alleged affirma-

tive matters admitting the factual allegations and denying the alleged conclusions of law and also set forth certain alleged affirmative matters or conclusions. The defendant City filed a reply to the alleged affirmative matters in the petitioner's reply denying all the alleged conclusions of law. Oral Jacobs, upon leave, filed a complaint of intervention as an intervenor plaintiff or petitioner realleging much of the petition and alleging certain other matters and joining in the petitioner's prayer for relief.

From the pleadings it is admitted that on July 1, 1952, the City of East Moline voted in favor of the managerial form of municipal government; on April 21, 1953, a Mayor and four councilmen were elected for the first time under the managerial form, and took office on May 4, 1953; a petition by the at least minimum number of electors to abandon the managerial form of municipal government was filed with the City Clerk on December 19, 1956; no objections thereto were filed and no judicial proceedings were had thereon as to its sufficiency; that petition to abandon was submitted to the City Council January 7, 1957; on January 21, 1957, the City Council passed an ordinance submitting the abandonment proposition to a vote at a general municipal election to be held on April 16, 1957; at the election of April 16, 1957, the votes were 1924 for abandoning the managerial form of government and 1751 against such abandonment; prior to the adoption of the managerial form of government the City of East Moline had been governed by the aldermanic-trustee form of municipal government under Article 9 of the Revised Cities and Villages Act; a demand upon the defendant City to comply with the majority vote of April 16, 1957, to abandon had not been made and would be unavailing for the reason that the City had adopted a resolution on October 22, 1958, not to abide by the result of the election to

abandon of April 16, 1957, and declaring such to be void and of no effect, which resolution was signed by Frank Esposito, Mayor, and attested by Arnold Nishaus, City Clerk; the City will in December, 1958, prepare and pass an election ordinance to govern the municipal election to be held April 21, 1959.

The defendant City, in its answer to the petition for mandamus, took the position that the City had not at the time, December 19, 1956, of the filing of the petition calling for an election to abandon the managerial form of government, or at the time, April 16, 1957, of holding the election thereon, operated for four years or more under the managerial form, that the election to abandon of April 16, 1957, was contrary to the provisions of Section 20—13 of the Revised Cities and Villages Act, was null and void, and of no legal force and effect. The petitioner in his reply to the defendant City's answer took the position that at the time of the filing of the petition to abandon the City had not operated for four years or more under the managerial form, but that at the time of the election to abandon it had so operated four years or more, and denied the election to abandon was contrary to par. 20—13 of Ch. 24 or null and void or of no legal effect, and the petitioner also set forth certain other alleged affirmative matters or conclusions, which need not now be here detailed.

The Circuit Court by its order of December 17, 1958, held for the petitioner, granted the writ of mandamus, directing the defendant City forthwith to abide by the result of the election to abandon of April 16, 1957, and held, as is indicated in the Court's written opinion filed contemporaneously, that the managerial form of government had originally gone into operation in the City immediately after the original vote of July 1, 1952, was found favorable to it, on July 1, 1952, and not on April 21, 1953, when the first

337

Mayor and Council had been elected thereunder, or on May 4, 1953, when that Mayor and Council had taken office. The order for mandamus further directed the defendant City to comply with Ch. 24, Ill. Rev. Stats., par. 20—13, and Article 9, and such other parts of the Revised Cities and Villages Act as may be applicable in preparing and passing an election ordinance to govern the forthcoming Municipal Election to be held in April, 1959. The Order recites that the parties have stipulated of record to the facts and evidence.

The writ of mandamus was issued December 19, 1958, pursuant to that order. The return to the writ indicates that the City Council passed an ordinance December 29, 1958, for a primary election and a general election for the purpose of nominating and electing municipal officers (the primary election to be held February 24, 1959, and a general election to be held April 21, 1959) for the election of a Mayor for a term of two years, and other officers—a city clerk, a city treasurer, police magistrate, and aldermen for various terms in each of five wards of the City.

The defendant City of East Moline did not take an appeal from the mandamus order entered against it, but Frank J. Esposito, Ray Westerbeck and F. Joseph Ryan filed a notice of appeal therefrom, and it is that appeal from that order for mandamus which is before us.

It is recited in the notice of appeal that Frank J. Esposito is a citizen of the City of East Moline, and Mayor of that City, having been so elected April 16, 1957, for a four year term; that F. Joseph Ryan and Ray Westerbeck are citizens, landowners, taxpayers, and qualified electors of the City of East Moline, that they voted in the election of April 16, 1957, at which Frank J. Esposito was elected Mayor and voted for him; that Frank J. Esposito will be injured by the

338

order appealed from, and benefited by a reversal thereof; that the order will deprive him of completing the four year term of office for which he was legally and validly elected on April 16, 1957, and that a reversal of the order will permit him to complete that term of office as Mayor to which he was so elected; and that the appellants F. Joseph Ryan and Ray Westerbeck will be injured by the order and benefited by its reversal because it deprives them of having the elected officer of their choice fulfill the term to which he was elected.

Motions were made in this Court by the defendant City, the original petitioner for mandamus, and the intervenor plaintiff or petitioner, to dismiss the appeal of Frank J. Esposito, F. Joseph Ryan and Ray Westerbeck upon the grounds that the appellants were not parties of record and have not shown a direct interest in the subject matter of the litigation, or that they are injured by the order for mandamus, or would be benefited by its reversal, or are competent to release errors. The appellees' motions and brief do not controvert the recitals of fact in the notice of appeal. The motions to dismiss the appeal were taken with the case.

■ ■ We believe the motions to dismiss the appeal should be and are denied insofar as the appeal of Frank J. Esposito is concerned. He does not take an appeal officially as Mayor of the City of East Moline, but we believe that he, individually, in view of the office he held at the time of the order, has alleged such facts in his notice of appeal as come within the applicable provisions of the Civil Practice Act and entitle him to appeal, though he was not a party of record. Under Section 74 of the Civil Practice Act, in part: ". . . The right heretofore possessed by any person not a party to the record to review a judgment or decree by writ of error is preserved by

339

notice of appeal."—Ch. 110, Ill. Rev. Stats., 1959, par. 74. Thereunder one not a party to the record has a right to appeal if it appears he has been injured by the judgment rendered, or will be benefited by its reversal, or is competent to release errors: Village of Westchester v. Holmes (1945) 390 Ill. 436; Lenhart v. Miller (1941) 375 Ill. 346; People ex rel. Yohnka v. Kennedy (1937) 367 Ill. 236; Cf. Anderson v. Steger (1898) 173 Ill. 112. It is to be assumed, under the circumstances, for the present purpose, that the appellant Frank J. Esposito was elected Mayor of the City of East Moline on April 16, 1957, ostensibly for a four year term, which, in the absence of some other applicable intervening facts or occurrences or law, would not expire until April, 1961. At the time the petition to abandon the managerial form of municipal government was here filed with the City Clerk, December 19, 1956, and the ordinance was passed submitting the proposition to a vote, January 21, 1957, and the election was held thereon at which the result was in favor of abandonment, April 16, 1957, paragraph 20—13 relating to abandonment of managerial form, being a part of Article 20, and which we hereafter set out in full, then provided, to the extent now material: Ch. 24, Ill. Rev. Stats., 1955, par. 20—13: ". . . If the proposition for abandonment is approved, such city . . . shall become subject to the provisions of Article 9 . . . upon the election and qualification of officers to be elected at the next succeeding general municipal election which officers shall be those prescribed by Articles 9 . . . ," and that ". . . In case the plan authorized by this Article is to be abandoned, the next general municipal election for officers shall be held at such time as is specified in Section 9—10 . . . of this Act for such election . . . ." The order of the trial court in this mandamus case directs the defendant City forthwith to abide

by the result of the election to abandon of April 16, 1957, and to comply with paragraph 20—13, Article 9, and such other parts of the Act as may be applicable in preparing and passing an election ordinance to govern the forthcoming municipal election to be held in April, 1959. The return to the writ of mandamus affirmatively shows the City of East Moline has adopted an ordinance for a primary and general election, February 24 and April 21, 1959, for, among others, a Mayor for a term of two years. The status of the appellant Frank J. Esposito as Mayor, his term, and the expiration thereof are collaterally, but only collaterally, involved in this case and we express no definitive opinion thereon because such matters are not directly before us. But, for the present purpose, the order of mandamus, whether error or not error, does appear to cast a cloud or doubt on, or, at least, somewhat jeopardize his status and term. If it were not for the election in favor of abandonment of April 16, 1957, the order directing the City to abide by that result, and the subsequent ordinance of the City responsive to the writ, that appellant evidently was and is elected Mayor April 16, 1957, for a four year term to expire in April, 1961. Now, under the circumstances, his term may, in effect, by those circumstances and by that order and by the possible applicable law, have been foreshortened to April, 1959. It would appear in contemplation of law that he has been injured by the judgment or would be benefited by its reversal, and hence we hold he is a proper appellant, regardless of what our views may be of the merits of this appeal or regardless of the disposition we may make of this particular case.

However, we do not believe that the appellants F. Joseph Ryan and Ray Westerbeck are directly affected by the order of mandamus simply as citizens, landowners, taxpayers, and electors, or electors who voted

341

April 16, 1957, for Frank J. Esposito for Mayor, and as to them the motions to dismiss their appeals should be and are allowed and those appeals are dismissed. In contemplation of law they are not injured by the judgment rendered and would not be benefited by its reversal and are not competent to release errors; whatever interest they may have in the outcome of this case is speculative, theoretical, inconsequential and remote, rather than a direct, immediate and substantial interest: Cf. People ex rel. E. J. Altorfer v. City of Peoria (1942) 378 Ill. 572.

The only issue on the merits here is on what date did the managerial form of government become effective and go into operation in the City of East Moline. The appellant contends it was on April 21, 1953, when a Mayor and councilmen were elected for the first time under the managerial form and that hence both the petition to abandon of December 19, 1956, and the election to abandon of April 16, 1957, were premature; the appellees contend it was on July 1, 1952, when the vote occurred in favor of the managerial form, and hence that neither the petition to abandon or the election to abandon were premature.

Article 20 of the Revised Cities and Villages Act of 1941 is entitled "Optional Managerial Form of Municipal Government"; Article 19 is entitled "Optional Commission Form of Municipal Government"; and Article 9 is entitled "Municipal Officers under Aldermanic-Trustee Form of Government—Elections—Compensation."

On the date the petition to abandon the managerial form of municipal government was filed with the City Clerk, December 19, 1956, and, likewise, on the date the ordinance was passed submitting the proposition to a vote, January 21, 1957, and on the date the election was held thereon at which the result was in favor of abandonment, April 16, 1957, paragraph 20—

13 relating to abandonment of managerial form, being a part of Article 20, Ch. 24, Ill. Rev. Stats., 1955, par. 20—13, then provided:

"20—13. Sec. 20—13. ABANDONMENT OF MANAGERIAL FORM.) Any city or village which has operated for four years or more under the Managerial Form of Municipal Government may abandon such organization in the manner herein provided. When a petition therefor signed by electors of the municipality equal in number to at least 10% of the number of votes cast for candidates for mayor at the preceding general quadrennial municipal election is filed with the city or village clerk (or with such officer as may perform the duties of such clerk with respect to elections) or with the board of election commissioners in cities and villages that have such boards, the following proposition shall be submitted at the next municipal election to be held at least 60 days after the filing of such petition: "Shall the city (or village) of . . . abandon the Managerial Form of Municipal Government?" The petition specified in this section shall be in the same form, its sufficiency shall be determined in the same manner, the election hereunder shall be ordered and conducted, and the results declared, as provided in Sections 19—58 to 19—60, inclusive, of this Act, in so far as they may be applicable.

"If the proposition for abandonment is approved, such city or village shall become subject to the provisions of Article 9 or of Article 19, whichever article was in force in such city or village immediately prior to the adoption of the plan authorized by this Article, except as otherwise hereafter provided in this Article, upon the election and qualification of officers to be elected at the next succeeding general municipal election which officers shall be those prescribed by Articles 9 or 19 of this Act, as the case may be, but such change shall not in any manner or degree affect the property rights or liabilities of such city or village.

343

"If a city or village operating under this Article has aldermen or trustees elected from wards or districts and a proposition to abandon such operation is approved, then the officers to be elected at the next succeeding general municipal election shall be elected from the same wards or districts as exist immediately prior to the abandonment.

"If a city or village operating under this Article has a council or village board elected from the municipality at large and a proposition to abandon such operation is approved, then the first group of alderman, board of trustees, or commissioners so elected shall be of the same number as was provided for in such municipality at the time of the adoption of a plan under this Article, with the same ward or district boundaries in cities or villages which immediately prior to the adoption of this Article had wards or districts, unless the municipal boundaries have been changed, in which event the council or village board shall so alter the former ward or district boundaries so as to conform as nearly as possible to the former division. In case the plan authorized by this Article is to be abandoned, the next general municipal election for officers shall be held at such time as is specified in Section 9—10 or 9—77 of this Act for such election.

"The proposition to abandon the Managerial Form of Municipal Government shall not be submitted in any city or village oftener than once in four years."

The beginning language of paragraph 20—13, namely, "any City or Village which has operated for four years or more under the Managerial Form of Municipal Government may abandon such organization in the manner herein provided, . . ." and the concluding language, namely, "The proposition to abandon the Managerial Form of Municipal Government shall

344

not be submitted in any city or village oftener than once in four years,"—is of particular significance.

In Mason v. Cutkomp (1957) 15 Ill.App.2d 378, a statutory proceeding arising under paragraphs 20—13 and 19—59 of the Revised Cities and Villages Act, upon a petition to abandon the managerial form of municipal government in Rock Island and objections to the petition, the principal objection being that the petition had been prematurely filed since it was filed before the expiration of 4 years of operation of managerial government, the trial court held that the petition had been prematurely filed and was, therefore, insufficient, and we affirmed. The sole issue before us was the sufficiency of the petition, and the precise question was whether paragraph 20—13 permits the filing of such a petition before the municipality has had a full four years of city manager government. We held it did not—that the petition, election, and abandonment (or retention) of a city manager government are parts of a series of acts—that it was not intended that the petition or election be mere preliminary steps to abandonment (which it was there urged might be taken prior to the expiration of 4 years operation)—and that none of the various steps in that series of acts (including the petition to abandon) may precede the expiration of the 4 year period of time set out in the statute. There was no issue before us there, and we did not there determine as to what or when was the point of beginning of operation by the city under the managerial form of government from which the required minimum period of 4 years operation is to be measured.

Was the defendant City of East Moline at the time the petition to abandon the managerial form of municipal government was filed with the City Clerk, December 19, 1956 (Mason v. Cutkomp, supra) a city "which has operated for four years or more under

345

the Managerial Form of Municipal Government," under the facts and circumstances here presented, and under the applicable law in effect at the significant times? If it was, then, pursuant to paragraph 20—13 it "may abandon such organization in the manner herein provided." If it was not, then it may not so abandon such organization and the petition to abandon was premature.

At the time of the election and vote of the City in favor of and to adopt the managerial form of municipal government, July 1, 1952, and of the election of the first Mayor and Council under the managerial form, April 21, 1953, and when that first Mayor and Council thereunder took office, May 4, 1953, paragraphs 20—1, 20—2, and 20—3, being parts of Article 20 of the Revised Cities and Villages Act, Ch. 24, Ill. Rev. Stats., 1951, pars. 20—1, 20—2, and 20—3, then provided:

"20—1. Sec. 20—1. CITIES AND VILLAGES OF 500,000 OR LESS MAY HAVE POWERS CONTAINED IN THIS ARTICLE.) All cities and villages with five hundred thousand or less inhabitants, which are treated as properly incorporated, or which hereafter are incorporated under this Act, in addition to all the rights, powers, and authority conferred upon them elsewhere in this Act, shall have the rights, powers and authority conferred in this Article, by proceeding as provided in Section 20—2. For convenience this Article is designated "The Managerial Form of Municipal Government".

"20—2. Sec. 20—2. PROCEDURE FOR ADOPTION.) Such cities and villages in order to vest themselves with the managerial form of municipal government, shall act in accordance with the procedure provided in Article 19 entitled "The Commission Form of Municipal Government". In the form of petition and ballot provided for in Section 19—6 and Section

346

19—8, the words "the managerial form of municipal government" shall be substituted for the words "the commission form of municipal government", provided that in cities which are operating under Section 9—28 of this Act and villages operating under Section 9—79 thereof at the time of the adoption of this Article, the forms of petition and ballot prescribed in Sections 19—6 and 19—8 of this Act may at the option of the petitioners be modified to contain the following additional proposition:

'If the City (or Village) of . . . adopts the managerial form of municipal government, shall it continue to elect aldermen (or trustees) from wards (or districts)?'

"In the event that both forms of the petition allowed under this Section are presented to the judge of the county court he shall cause only the question or questions contained in the first petition so presented to be submitted to an election, if he finds that such petition is in proper form and legally sufficient.

"20—3. Section 20—3. ARTICLES 9 or 19, IF PREVIOUSLY ADOPTED, TO APPLY EXCEPT AS MODIFIED.) Upon the adoption of this Article, as prescribed in Sections 19—5 to 19—12 of Article 19 inclusive, by such a city or village, that city or village shall be vested with all the rights, privileges, powers and immunities conferred by Articles 9 or 19, as the case may be, in force at the time such city or village adopted this Article, including the procedures for elections therein described, the officers therein named, the duties and liabilities therein set forth, except as modified by this Article. In cities of 100,000 or more and less than 500,000 population which continue to elect aldermen from wards, the city clerk shall receive a salary not to exceed $8,400 per year and the city treasurer shall receive a salary not to exceed $6,000.00 per year, such salaries to be fixed by the city council."

347

In other words, at those times—July 1, 1952, April 21, 1953, and May 4, 1953, under the then law—the City "shall have the rights, powers and authority conferred in this Article (Article 20) by proceeding as provided in Section 20—2" (par. 20—1); the City "in order to vest themselves with the managerial form of municipal government, shall act in accordance with the procedure provided in Article 19 entitled 'The Commission Form of Municipal Government'" (par. 20—2); and "upon the adoption of this Article, as prescribed in Sections 19—5 to 19—12 of Article 19 inclusive, by such . . . city . . . , that city . . . shall be vested with all the rights, privileges, powers and immunities conferred by Articles 9 or 19, as the case may be, in force at the time such city . . . adopted this Article, . . . except as modified by this Article . . ." (par. 20—3).

And at those foregoing times—July 1, 1952, April 21, 1953, and May 4, 1953—paragraphs 19—8 (in part, so far as material), 19—10, 19—11, and 19—12 of Article 19, Ch. 24, Ill. Rev. Stats., 1951, pars. 19—8, 19—10, 19—11, and 19—12, then provided:

"19—8. Sec. 19—8. Election—Result. . . . If a majority of the electors voting upon this proposition vote Yes, this article is adopted in that municipality. Thereupon, the mayor or president shall immediately issue a proclamation declaring this article in force. Thenceforth this article shall be in effect in that municipality.

" . . .

"19—10. Sec. 19—10. CERTIFICATE OF ADOPTION. If the commission form of municipal government is adopted, the mayor or president immediately shall transmit a certificate so stating to (1) the Secretary of State, (2) the clerk of the county court, and

348

(3) the county recorder. These officers shall file this certificate in their respective offices and transcribe it upon the records thereof.

"19—11. Sec. 19—11. FAILURE TO ACT NOT TO INVALIDATE.) The failure of the officers named in sections 19—7 to 19—10 inclusive, to perform the duties and acts imposed upon them by those sections, shall neither invalidate nor prevent the adoption of this article.

"19—12. Sec. 19—12. JUDICIAL NOTICE OF ADOPTION.) All courts shall take judicial notice of the adoption of this article by all municipalities adopting it."

On July 1, 1952, a majority of the electors of the City of East Moline voting upon the proposition to adopt the managerial form of municipal government having voted Yes, "this article" (meaning Article 20, Optional Managerial Form of Municipal Government) *"is adopted* in that municipality"; *"thereupon"* the then Mayor was required to *"immediately* issue a proclamation declaring this article (meaning Article 20) *in force";* and *"thenceforth* this Article (meaning Article 20) *shall be in effect* in that municipality"; if the managerial form of municipal government *"is adopted,"* as it was, the then Mayor was required to *"immediately* . . . transmit a certificate so stating to (1) the Secretary of State, (2) the clerk of the county court, and (3) the county recorder"; "the failure (if any) of the officers named . . . to perform the duties and acts imposed upon them . . ." "shall neither invalidate nor prevent the adoption of this Article" (meaning Article 20) ; and all courts were required to "take judicial notice of the adoption of this article (meaning Article 20) by all municipalities adopting it" (including the City of East Moline): Ch. 24, Ill. Rev. Stats., 1951, pars. 19—8, 19—10, 19—11,

349

and 19—12. That language of the then applicable statutes, particularly those parts we've italicized, is all in praesenti and necessarily means that immediately, July 1, 1952, upon the Yes vote of a majority of the electors voting upon the proposition, Article 20, Optional Managerial Form of Municipal Government, was then and there adopted in the City of East Moline, was thereupon in force, and thenceforth was in effect.

The City of East Moline, under the then applicable statutes, having proceeded as provided in Section 20—2, and acted in accordance with the procedure provided in Article 19, thereupon had the rights, powers, and authority conferred in Article 20, Optional Managerial Form of Municipal Government, and thenceforth vested itself with the managerial form of municipal government, and that Article having been so adopted the City was then vested with all the rights, privileges, powers and immunities conferred by Article 9, Municipal Officers Under Aldermanic-Trustee Form of Government etc. (it being previously thereunder) except as modified by Article 20: Ch. 24, Ill. Rev. Stats., 1951, pars. 20—1, 20—2, and 20—3.

■ Therefore, at the time the petition to abandon the managerial form of municipal government was filed with the City Clerk, December 19, 1956, the City of East Moline was a city "which has operated for four years or more under the Managerial Form of Municipal Government," under the facts and circumstances here presented, and under the applicable law in effect at the significant times—it had so operated since July 1, 1952—and, hence, it "may abandon such organization in the manner herein provided": Ch. 24, Ill. Rev. Stats., 1955, par. 20—13. The petition of December 19, 1956, to abandon the managerial form of municipal government was, consequently, not premature.

350

It may be observed that paragraph 20—13, abandonment of managerial form, to which we have referred, was added to the statute in 1951: Laws, 1951, p. 1001; Ch. 24, Ill. Rev. Stats., 1951, par. 20—13. It remained unchanged throughout the times significant to this case. It was amended in 1959 by two separate acts: H. B. No. 355, Laws, 1959, p. 940, H. B. No. 903, Laws 1959, p. 1061, Ch. 24, Ill. Rev. Stats., 1959, par. 20—13. The subsequent 1959 amendments thereto do not appear to have any application to the present case, under the circumstances. It may also be observed that paragraph 20—2, procedure for adoption, to which we have referred, was amended in 1953 by an Act approved July 16, 1953: Laws, 1953, p. 1711; Ch. 24, Ill. Rev. Stats., 1959, par. 20—2, and has remained unchanged since 1953. The 1953 amendments thereto relate, in part, to the matter of when, upon a vote to adopt the managerial form of municipal government, Article 20 shall become effective in that municipality and shall be in operation. The vote in favor of and to adopt the managerial form of municipal government in the City of East Moline having occurred July 1, 1952, the election of the first Mayor and Council thereunder having occurred April 21, 1953, and their taking office having occurred May 4, 1953, the subsequent 1953 amendments thereto do not appear to have any application to the present case. We express no opinion as to any factual situation not before us or as to any subsequent amendments of paragraphs 20—13 or 20—2 not applicable to the case at bar.

The defendant City of East Moline was, therefore, required to abide by the result of the election of April 16, 1957, for the abandonment of the managerial form of municipal government, and to proceed according to law, and, the appellant urging no other reason why the order for mandamus is error or should be re-

351

versed, the order will be affirmed. Other points urged by the appellees are not necessary to the determination of the case and are not passed on.

Motions to dismiss appeal DENIED as to appellant Frank J. Esposito.

Motions to dismiss appeal ALLOWED as to appellants F. Joseph Ryan and Ray Westerbeck and appeal dismissed as to them.

Affirmed.

SOLFISBURG, P. J. and WRIGHT, J., concur.